Docket Nos. 87320, 87324 cons.–Agenda 18–November 1999.

KENNETH SKOLNICK 
et al.
, Appellees, v. ALTHEIMER & GRAY 
et al
. (Terry Robin Horwitz Kass, Appellant; Sonnenschein Nath & Rosenthal, Appellee).

Opinion filed March 23, 2000.

JUSTICE McMORROW delivered the opinion of the court:

After plaintiffs Kenneth and Julia Skolnick filed a multicount complaint in the circuit court of Cook County against defendants Terry Robin Horwitz Kass and Altheimer & Gray, the trial court entered an agreed protective order that forbade dissemination of designated materials produced during discovery. Subsequently, Kass sought modification of the protective order and leave to file a counterclaim against the plaintiffs. Kass alleged that documents produced as discoverable materials revealed fraudulent conduct by Kenneth Skolnick. Kass argued that the newly revealed information triggered her ethical obligation to report suspected attorney misconduct to the Illinois Attorney and Registration Disciplinary Commission (ARDC), and therefore, that the information should no longer be subject to the restrictions of the protective order. Kass asserted as well that these same documents gave rise to the allegations of her counterclaim.

The trial court granted leave to file the counterclaim, but simultaneously ordered that the counterclaim remain under seal. The court also refused to modify the protective order. The appellate court affirmed the trial court’s order placing the counterclaim under seal, and reversed that part of the order refusing to modify the protective order. 303 Ill. App. 3d 27. In this consolidated appeal, which is before the court pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315), we affirm in part and reverse in part.

BACKGROUND

 In 1993, plaintiff Kenneth Skolnick (Skolnick), a lawyer, was employed by the defendant law firm of Altheimer & Gray (Altheimer) as an equity partner. Defendant Terry Robin Horwitz Kass (Kass), also a lawyer, was employed by Altheimer as an associate. In June 1993, Altheimer and Kass sent separate letters to the ARDC. The ARDC is an agency of this court which, 
inter
 
alia
, receives, investigates and prosecutes allegations of professional misconduct by attorneys licensed to practice in Illinois. 134 Ill. 2d R. 751 
et seq.
 In their respective letters, Kass and Altheimer stated that the firm had inadvertently filed a forged document with the circuit court of Cook County and that an unknown person in the firm, possibly a lawyer, had created the bogus document. Neither letter asserted directly that Skolnick was responsible for the purported forgery, but each letter identified Skolnick as an individual who had been questioned concerning the creation of the forged document.

The Administrator of the ARDC filed a complaint against Skolnick, and charged him with several breaches of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 1.1 
et seq.
). The Administrator alleged that Skolnick had, among other things, caused a forged document to be filed with the circuit court and had engaged in conduct involving dishonesty, fraud, deceit or misrepresentation; engaged in conduct prejudicial to the administration of justice; and in the course of representing a client, knowingly made a misstatement of material fact to a third party. 134 Ill. 2d Rs. 4.1(a), 8.4(a)(4), (a)(5). The ARDC conducted an investigation regarding the allegations contained in the ARDC complaint, but later dismissed the action for lack of evidence.

On May 17, 1995, Skolnick and his wife, Julia Skolnick (collectively, plaintiffs), filed a nine-count complaint against Altheimer and Kass. Plaintiffs alleged that Kass and Altheimer accused Kenneth Skolnick of creating the forged document, and that defendants repeated these accusations to others within the firm, and to clients of the firm, even though Altheimer and Kass knew these accusations to be false. Kenneth Skolnick asserted that he lost present and future business as a result of the accusations, and that he was forced to leave the firm and accept a job paying a reduced salary and benefits. Skolnick pleaded claims for defamation, tortious interference with business relations, breach of fiduciary duty and intentional infliction of emotional distress. Julia Skolnick asserted a separate claim for loss of consortium and joined her husband in seeking damages for intentional infliction of emotional distress.

The circuit court entered an “Agreed Protective Order” on February 1, 1996. The order applied to “all information supplied during discovery [in the lawsuit] that shall be designated by the party or person producing it as ‘confidential.’ ” Access to “confidential” information was restricted to the court, the parties, their attorneys, and experts retained for litigation. The order also allowed any party to “seek relief from the court *** from any of the provisions or restrictions” provided in the order, “upon good cause shown.”

On February 19, 1998, Kass moved for modification of the protective order, and for leave to file a counterclaim. Kass maintained that, during the course of discovery, she received records generated by nonparty entities indicating that Kenneth Skolnick had engaged in fraudulent conduct. According to Kass, the content of the documents triggered her obligation, under the Illinois Code of Professional Conduct, to report Kenneth Skolnick’s alleged misconduct to the ARDC. 134 Ill. 2d R. 8.3(a). She requested modification of the confidentiality provisions of the protective order so she could disclose the contents of the documents to the ARDC. Additionally, Kass argued that these same documents formed the basis for her counterclaim. After a hearing, the trial court denied Kass’ motion to modify the protective order, and granted Kass leave to file the counterclaim, although the court directed Kass to file the pleading under seal.

Kass appealed the circuit court’s order to the appellate court pursuant to Illinois Supreme Court Rule 307(a).
(footnote: 1) 166 Ill. 2d R. 307(a). The appellate court partially reversed and partially affirmed the circuit court order. 303 Ill. App. 3d 27. The appellate court held that Kass’ obligation to report attorney misconduct to the appropriate authority was “absolute” and that this absolute duty “must be accompanied by the absolute right to report.” 303 Ill. App. 3d at 30. Thus, the trial court’s refusal to modify an agreed order to allow the attorneys to fulfill their ethical obligations constituted error. 303 Ill. App. 3d at 30.

 The appellate court ruled also that merely reporting Skolnick’s suspected attorney misconduct to the trial court did not relieve Kass of her obligation to report to the ARDC. Only the Illinois Supreme Court or its designated agent possesses the authority to punish attorneys for their ethical transgressions. 
Ipso facto
, the supreme court is the only forum that can receive complaints of ethical wrongdoing. 303 Ill. App. 3d at 30.

The appellate court affirmed the trial court’s order placing Kass’ counterclaim under seal. 303 Ill. App. 3d at 33. The appellate court held that, by agreeing to the protective order, Kass voluntarily relinquished her right to disseminate “confidential” information gathered in the course of discovery. Further, constitutional rights do not attach to information disclosed solely to try a lawsuit, and, given the breadth of discoverable material under our court rules, a trial court must retain authority to block the dissemination of information, as it deems necessary. The appellate court rejected too the contention that “the public” could claim access to the allegations contained in the counterclaim. The court concluded that Kass lacked standing to assert this argument. 303 Ill. App. 3d at 32.

Pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315), this court granted Kass’ petition for leave to appeal the appellate judgment affirming the trial court’s order to file her counterclaim under seal. The court has consolidated Kass’ appeal (Docket No. 87324) with the Skolnicks’ separate appeal (Docket No. 87320), also pursuant to Rule 315, from the appellate judgment reversing the trial court’s order refusing to modify the protective order.

ANALYSIS

A. Appellate Court Jurisdiction

The Skolnicks contend that the appellate court lacked jurisdiction to entertain Kass’ interlocutory appeal. The Skolnicks argue that Supreme Court Rule 307(a)(1), which formed the basis for the appeal below, only permits interlocutory appeals from orders granting or denying injunctive relief. 166 Ill. 2d R. 307(a)(1). The trial court’s order denying the motion to modify the protective order was not in the nature of injunctive relief, Skolnick maintains, but rather a ministerial act “deriving from inherent authority of the [c]ircuit [c]ourt to control its proceedings.”

Rule 307(a)(1) states:

“An appeal may be taken to the Appellate Court from an interlocutory order of court:

(a) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction[.]” 166 Ill. 2d R. 307(a)(1).

A court looks to the substance, not the form, of an order to determine if it is injunctive in nature
. In re A Minor
, 127 Ill. 2d 247, 260 (1989). Illinois courts have construed the meaning of “injunction” in Rule 307(a)(1) broadly. 
In
 
re
 
A
 
Minor
, 127 Ill. 2d at 262; 
Doe v. Doe
, 282 Ill. App. 3d 1078, 1082 (1996). An injunction is “a ‘judicial process operating in personam and requiring [a] person to whom it is directed to do or refrain from doing a particular thing.’ ” 
In re A Minor
, 127 Ill. 2d at 261, quoting Black’s Law Dictionary 705 (5th ed. 1979). In particular, an interlocutory order circumscribing the publication of information is reviewable as an interlocutory injunctive order, pursuant to Rule 307(a)(1). 
In re A Minor
, 127 Ill. 2d at 263; 
Doe
, 282 Ill. App. 3d at 1082;
 Cummings v. Beaton & Associates, Inc.
, 192 Ill. App. 3d 792, 796 (1989).

In this case, the protective order entered by the circuit court allowed the parties to designate information disclosed in discovery as “confidential.” Once so designated, the information could be disclosed only to persons expressly identified in the protective order. By its terms, therefore, the order forbade the publication of certain information, or, in other words, circumscribed the parties’ opportunity to “do a particular thing.”

Nonetheless, the Skolnicks maintain that the protective order was only a ministerial act, resulting from the trial court’s inherent authority to control access to court records. Citing to 
JFS v. ABMJ
, 120 Ill. App. 3d 261 (1983), the Skolnicks contend that purely ministerial functions of the trial court, such as “impounding records,” do not amount to injunctive relief under Rule 307(a)(1).

The Skolnicks’ argument lacks merit. This court has explicitly overruled 
JFS
 to the extent that 
JFS
 suggests that court-ordered restraints upon publication of information are not appealable under Rule 307(a)(1). See 
In re A Minor
, 127 Ill. 2d at 263. The order denying Kass’ motion to modify the protective order and restricting public access to pleadings was in the nature of injunctive relief. The appellate court possessed the necessary jurisdiction to dispose of the parties’ appeal.

Equally meritless is the Skolnicks’ insistence that, if injunctive in nature, then the circuit court’s order is a permanent injunction and thus is not subject to interlocutory appeal (citing 
Steel City Bank v. Village of Orland Hills
, 224 Ill. App. 3d 412, 416-17 (1991)). The Skolnicks are correct that a permanent injunction is a final order, appealable only pursuant to Supreme Court Rules 301 or 304 (155 Ill. 2d Rs. 301, 304). 
Steel City Bank
, 224 Ill. App. 3d at 417. A permanent injunction is of unlimited duration and “alters the status quo,” meaning that it adjudicates rights between the interested parties. 
Smith v. Goldstick
, 110 Ill. App. 3d 431, 438 (1982). The Skolnicks attempt to compare the protective order to a permanent injunction by stating that the order established a “status quo” between the parties.

The Skolnick’s argument is misplaced. The protective order is not a permanent injunction because it “concludes no rights” between the parties. 
Smith
, 110 Ill. App. 3d at 438. It follows, therefore, that nothing in Kass’ appeal sought to alter permanent injunctive relief. The appellate court appropriately exercised its jurisdiction to entertain Kass’ appeal.

B. Kass’ Duty to Disclose Information Subject to the

Protective Order

The Skolnicks assert that the appellate court erred by reversing the trial court’s order denying Kass’ motion to modify the protective order. The Skolnicks’ attack on the appellate court judgment is threefold. First, the Skolnicks contend that “[t]he [a]ppellate [c]ourt improperly assumed that the mere claim of a reporting obligation by a lawyer for an adverse party strips the trial court of any authority or discretion regarding the protective order.” Second, the Skolnicks question whether Kass bore any obligation under the Rules of Professional Conduct to report the alleged misconduct. Third, assuming Kass possessed a duty to report the purported misconduct, the duty was fulfilled by alerting the trial court to Skolnick’s alleged wrongdoing. We dispose of each of these arguments 
seriatim
.

Trial courts are invested with considerable discretion to supervise the course of discovery as the court deems appropriate. 
Atwood v. Warner Electric Brake & Clutch Co.
, 239 Ill. App. 3d 81, 88 (1992). The flexibility enjoyed by trial courts in directing discovery extends to the entry of protective orders
. May Centers, Inc. v. S.G. Adams Printing & Stationery Co.
, 153 Ill. App. 3d 1018, 1021 (1987). Supreme Court Rule 201(c)(1) states:

“The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression.” 166 Ill. 2d R. 201(c)(1).

The parameters of protective orders are entrusted to the court’s discretion. 
Statland v. Freeman
, 112 Ill. 2d 494, 499 (1986). We will alter the terms of a protective order only if no reasonable person could adopt the view taken by the circuit court. 
Cleveringa v. J.I. Case Co.
, 230 Ill. App. 3d 831, 848 (1992).

At bar, the protective order proposed by the parties and entered by the circuit court precluded the parties from disclosing information produced by a party during discovery, which the producing party designated as “confidential.” Information originally obtained from nonparties also could not be disclosed if deemed confidential by a party. The order allowed any party to seek modification of the protective order for good cause.

Citing 
In re Himmel
, 125 Ill. 2d 531 (1988), and Supreme Court Rule 8.3(a) (134 Ill. 2d R. 8.3(a)), Kass argued that the content of certain “confidential” documents obtained during discovery supposedly revealed misconduct by Kenneth Skolnick. Kass insisted that the knowledge of this misconduct necessitated modification of the protective order so that Kass could fulfill her ethical duty to report the purported misconduct to the ARDC.

In 
Himmel
, 125 Ill. 2d 531, Tammy Forsberg retained attorney John Casey to represent her in a personal injury action. Pursuant to a contingency agreement executed between Forsberg and Casey, Casey was to receive one-third of any settlement or verdict he obtained in Forsberg’s favor. Casey subsequently obtained a $35,000 settlement for Forsberg, but Casey converted the entire $35,000 for his own use and never forwarded any amount of the settlement to Forsberg. After unsuccessful attempts to get her money from Casey, Forsberg retained attorney James Himmel to help Forsberg recover her share of the personal injury settlement from Casey.

In the course of representing Forsberg, Himmel learned that Casey had illegally converted Forsberg’s settlement funds. Forsberg, represented by Himmel, then entered into a settlement with Casey, whereby Casey promised to pay Forsberg $75,000 in return for Forsberg’s pledge not to bring any legal action against Casey arising out of his conversion of Forsberg’s money. Additionally, Forsberg instructed Himmel not to report Casey’s professional misconduct to the ARDC.

Casey’s unethical behavior was eventually revealed, and the ARDC prosecuted Himmel for violation of a prior version of Rule 8.3(a), Illinois Supreme Court Rule 1–103(a) (107 Ill. 2d R. 1–103(a)). Like Rule 8.3(a), Rule 1–103(a) imposed on Illinois lawyers an affirmative obligation to report unprivileged knowledge of another lawyer’s fraudulent or deceitful conduct to the proper authorities. 
Himmel
, 125 Ill. 2d at 539; 107 Ill. 2d R. 1–103(a).

This court affirmed the ARDC’s determination that Himmel should be publicly disciplined for failing to report Casey’s misconduct to the ARDC. Regardless of Forsberg’s direction that Himmel should not inform the ARDC of Casey’s actions, Himmel was “duty-bound to uphold the rules in the Code [of Professional Responsibility]” (
Himmel
, 125 Ill. 2d at 539), including the rule that mandates reporting acts of fraud, deceit or misrepresentation by other lawyers. 
Himmel
, 125 Ill. 2d at 541.

 Significantly, the court remarked that failure to report Casey’s bad acts necessitated Himmel’s suspension, regardless of the absence of a “dishonest motive” by Himmel. 
Himmel
, 125 Ill. 2d at 542. Himmel’s knowledge of Casey’s conduct “involving dishonesty, fraud, deceit, or misrepresentation,” where that knowledge is otherwise not subject to the attorney/client privilege, was sufficient to impose on Himmel an obligation to report Casey to the ARDC. Failing in that obligation, Himmel was himself subject to punishment. 
Himmel
, 125 Ill. 2d at 543.

As stated in 
Himmel
, the duty to report misconduct is absolute. See also
 Jacobson v. Knepper & Moga, P.C.
, 185 Ill. 2d 372, 377 (1998). Further, the duty, and the certain discipline that flows from a breach of that duty, is animated by a desire to: maintain the integrity of the legal profession, further the ends of justice, and protect the public from unscrupulous attorneys. 
Himmel
, 125 Ill. 2d at 544; 
In re Demuth
, 126 Ill. 2d 1,13 (1988); 
In re Imming
, 131 Ill. 2d 239, 260 (1989). Although Rule 201(c)(1) permits courts to enter protective orders “as justice requires,” the principles underlying a lawyer’s 
Himmel
 obligation are so important that, in our opinion, only the weightiest considerations of “justice” (166 Ill. 2d R. 201(c)(1)) could excuse a trial court’s refusal to modify a protective order so that counsel could fulfill its absolute, ethical duties.

In this case, the Skolnicks fail to identify any reason why Kass’ ethical obligations should yield to the terms of the protective order. Further, the trial court neglected to explain why it denied Kass’ motion to modify the protective order. The transcript of the hearing on the motion to modify the protective order indicates only that the court entertained argument of counsel and then ruled in the Skolnicks’ favor. In the absence of any stated justification for refusing to modify the protective order, the interests of justice weigh decidedly in favor of allowing Kass to fulfill her ethical duty to disclose the alleged attorney misconduct.

The Skolnicks next contend that the circumstances of the present lawsuit do not trigger the reporting obligations stated in Rule 8.3(a) (134 Ill. 2d R. 8.3(a)). An attorney is obliged to report the misconduct of another attorney only under the following circumstances:

“(a) A lawyer possessing knowledge not otherwise protected as a confidence by these Rules or by law that another lawyer has committed a violation of Rule 8.4(a)(3) or (a)(4) shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.” 134 Ill. 2d R. 8.3(a).

Rule 8.4(a)(3) forbids lawyers from committing criminal acts that reflect adversely on their trustworthiness, honesty or fitness as an attorney. 134 Ill. 2d R. 8.4(a)(3). Rule 8.4(a)(4) bars lawyers from engaging in conduct involving fraud, dishonesty, deceit or misrepresentation. 134 Ill. 2d R. 8.4(a)(4).

The Skolnicks assert first that the information Kass sought to disclose is “protected as a confidence” and therefore expressly excepted from the obligation to report stated in Rule 8.3(a). The Skolnicks derive their interpretation of “confidence” from the documents that the Skolnicks tagged with the label “confidential” during discovery. Their interpretation of the meaning of “confidence” as it is used in Rule 8.3 is misguided. The Rules of Professional Conduct contain a “Terminology” section to define designated words used in the rules. According to the definition supplied by this court, “[c]onfidence” “denotes information protected by the lawyer- client privilege under applicable law.” 134 Ill. 2d 472. The Skolnicks do not claim that the documents in question are subject to the attorney/client privilege. Accordingly, Kass is in no danger of improperly revealing a “confidence,” as described in Rule 8.3.

The Skolnicks maintain that Kass cannot report any alleged misconduct to the ARDC because Kass does not possess “knowledge *** that another lawyer has committed a violation of *** Rule 8.4(a)(3) or (a)(4).” Apparently, the Skolnicks believe that “knowledge” means “absolute certainty” and, further, that Kass failed to demonstrate the alleged wrongdoing with a sufficient degree of certainty to justify any report to the ARDC. The Skolnicks offer no authority to support their interpretation. However, we note that the terminology section of the Code of Professional Conduct defines “[k]nowingly,” “known” and “knows” as “actual knowledge” which “may be inferred from circumstances.” 134 Ill. 2d 472; Annotated Model Rules of Professional Conduct 555 (3d ed. 1996). Further, the “knowledge” requirement of our Rule 8.3 is similar to Model Rule 8.3 propounded by the American Bar Association (ABA). Annotated Model Rules of Professional Conduct 555 (3d ed. 1996). Upon review of ethical opinions from other states, the ABA has concluded that the “knowledge” requirement of Model Rule 8.3 requires “more than a mere suspicion” but need not amount to “absolute certainty.” Annotated Model Rules of Professional Conduct 555 (3d ed. 1996).

We have examined the documents filed under seal in support of Kass’ motion to modify the protective order. We will not divulge the contents of the documents, but we are satisfied that the information contained in the documents raises more than a mere suspicion of misconduct by Kenneth Skolnick. Kass could reasonably infer from the circumstances of the events revealed by the documents that conduct of the sort described in Rules 8.4(a)(3) and 8.4(a)(4) had occurred. Therefore, Kass possessed adequate knowledge to trigger the reporting responsibilities under Rule 8.3. We emphasize, however, that while we conclude that Kass had a duty to report the suspected misconduct to the ARDC, we do not render an opinion as to the merits of any charges that may or may not be filed against Kenneth Skolnick as a result of the information the ARDC receives in relation to this matter.

Lastly, the Skolnicks argue that Kass can discharge her ethical duty to report lawyer misconduct by informing the trial court of the alleged misbehavior, and that Kass need not alert the ARDC to her suspicions of Skolnick’s supposed wrongdoing. In support of this argument, the Skolnicks quote Rule 8.3(a), which directs those reporting misconduct to do so “to a 
tribunal
 or other authority empowered to investigate or act upon such violation.” (Emphasis added.) 134 Ill. 2d R. 8.3(a).

The Skolnicks misinterpret Rule 8.3(a). The word “tribunal” must be read in the context of the entire sentence in which it appears. 
M.I.G. Investments, Inc. v. Environmental Protection Agency
, 122 Ill. 2d 392, 400 (1988). The proper inquiry is not whether a “tribunal” means a “trial court,” as the Skolnicks contend, but rather means what authority or authorities are “empowered” to act upon a charge of attorney misconduct. As stated in Rule 8.3(a), only an authority granted such power may receive reports of misconduct. 134 Ill. 2d R. 8.3(a). In Illinois, only this court possesses the “inherent power to discipline attorneys who have been admitted to practice before it.” 
In re Harris
, 93 Ill. 2d 285, 291 (1982). The court, in turn, has delegated the authority to investigate and prosecute claims of attorney misconduct to the ARDC. 
In re Mitan
, 75 Ill. 2d 118, 123-24 (1979). Further, while a trial court bears an independent responsibility to report attorney misconduct to the ARDC (155 Ill. 2d R. 63(B)(3)), only this court may discipline an attorney found guilty of ethical misbehavior. 
In re Himmel
, 125 Ill. 2d at 544. Thus, Kass is correct in arguing that she was required to report the claimed misconduct to the ARDC. See also 
People v. Camden
, 210 Ill. App. 3d 921, 926 (1991). Her duty to report cannot be discharged by reporting the suspected misconduct to the trial court. The trial court’s refusal to modify the protective order prevented Kass from fulfilling her obligation to report attorney misconduct to the ARDC. We find that the trial court’s refusal to modify the protective order was not a reasonable exercise of the trial court’s discretion. We affirm the appellate court judgment to the extent it reversed the trial court’s order denying Kass’ motion to modify the protective order.

C. Whether the Trial Court Errantly Ordered That Kass’ Counterclaim Be Filed Under Seal

In a separate appeal, Kass contends that the circuit court abused its discretion by ordering that Kass’ counterclaim remain under seal. Kass asserts that the circuit court order violates the public’s right, grounded in common law and in the United States Constitution, to access court files. U.S. Const., amend. I.

1. 
The Common Law Right to Review Court Files

In 
Nixon v. Warner Communications, Inc.
, 435 U.S. 589, 597, 55 L. Ed. 2d 570, 579, 98 S. Ct. 1306, 1312 (1978), the United States Supreme Court acknowledged the existence of a common law presumption that allows the public to “inspect and copy public records and documents, including judicial records and documents.” 
Nixon
, 435 U.S. at 597, 55 L. Ed. 2d at 579, 98 S. Ct. at 1312. The common law right of access to court records is essential to the proper functioning of a democracy (
Minneapolis Star & Tribune Co. v. Schumacher
, 392 N.W.2d 197, 202 (Minn. 1986)), in that citizens rely on information about our judicial system in order to form an educated and knowledgeable opinion of its functioning (
Minneapolis Star & Tribune Co.
, 392 N.W.2d at 202). Too, the availability of court files for public scrutiny is essential to the public’s right to “monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.” 
In re Continental Illinois Securities Litigation
, 732 F.2d 1302, 1308 (7th Cir. 1984); see also 
Newell v. Field Enterprises, Inc.
, 91 Ill. App. 3d 735, 748 (1980) (“the common law right of access *** symbolizes the legislature’s determination that the public interest is best served by increasing the public’s knowledge about what is transpiring inside the judicial process”).

In Illinois, the state legislature codified the public’s right to review judicial records in section 16(6) of the Clerks of the Courts Act (705 ILCS 105/16(6) (West 1998)):

“All records, dockets and books required by law to be kept by such clerks shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records, docket and books, and also to all papers on file in the different clerks’ offices and shall have the right to take memoranda and abstracts thereto.” 705 ILCS 105/16(6) (West 1998).

In re Marriage of Johnson
, 232 Ill. App. 3d 1068, 1072 (1992); see also 
Nixon
, 435 U.S. at 597 n.7, 55 L. Ed. 2d at 579 n.7, 98 S. Ct. at 1312 n.7 (citing an earlier version of section 16(6)).

However, the right of access is not absolute. In 
Nixon
, the Supreme Court stated that “[e]very court has supervisory power over its own records and files, and access [may be] denied where court files might[ ] become a vehicle for improper purposes.” 
Nixon
, 435 U.S. at 598, 55 L. Ed. 2d at 580, 98 S. Ct. at 1312. Thus, whether court records in a particular case are opened to public scrutiny rests with the trial court’s discretion, which must take into consideration all facts and circumstances unique to that case. 
Nixon
, 435 U.S. at 599, 55 L. Ed. 2d at 580, 98 S. Ct. at 1312-13; but see 
Johnson
, 232 Ill. App. 3d at 1072-73 (to overcome presumption, the party opposing public access bears the burden of establishing: (1) a compelling interest that favors a closed file, and (2) that the protective order is drafted in the least restrictive manner possible); D. Lee, 
Sealed Documents, Closed Hearings, and the Public’s Right to Know
, 81 Ill. B.J. 456, 457 (1993).

2. 
The Constitutional Right to Inspect Court Files

There is a parallel right of access to court records embodied in the first amendment to the United States Constitution (U.S. Const., amend. I). 
Grove Fresh Distributors, Inc. v. Everfresh Juice Co.
, 24 F.3d 893, 897 (7th Cir. 1994). The first amendment right presumes a right to inspect court records which have “historically been open to the public” and disclosure of which would further the court proceeding at issue. 
United States v. Corbitt
, 879 F.2d 224, 228 (7th Cir. 1989). The presumption can be rebutted by demonstrating that suppression is “essential to preserve higher values and is narrowly tailored to serve that interest.” 
Grove
, 24 F.3d at 897. Other courts have interpreted the first amendment right of access as requiring a showing of a “compelling” or similarly stringent interest to overcome the constitutional right to review court records. See 
Minneapolis Star & Tribune Co. v. Schumacher
, 392 N.W.2d 197, 203 (Minn. 1986); 
Johnson
, 232 Ill. App. 3d at 1075; 
Sealed Documents
, 81 Ill. B.J. at 457 nn.13, 14.
(footnote: 2)
 Whether we proceed under the common law or constitutional standards, the counterclaim in this case became part of the court file once the trial court granted leave to file the pleading. 
In re Marriage of Johnson
, 232 Ill. App. 3d 1068, 1074 (1992); 705 ILCS 105/16(6) (West 1998). At that point, the presumption of a right of public access to the counterclaim attached.

Moreover, under either the common law standard or the first amendment standard, the Skolnicks failed to make the necessary showing to rebut the presumption of a right of access to the court file. None of the reasons the Skolnicks articulated before the trial court in opposition to the motion to file a counterclaim amounted to a “compelling interest” (
Minneapolis Star & Tribune Co.
, 392 N.W.2d at 203) or suggested an “improper purpose[ ]” (
Nixon
, 435 U.S. at 598, 55 L. Ed. 2d at 580, 98 S. Ct. at 1312) sufficient to justify a sealed court file. Further, the trial court neglected to state why it ordered the counterclaim under seal. Therefore, regardless of whether we proceed under a common law or a first amendment analysis, we reach the same conclusion: the trial court abused its discretion by ordering the counterclaim to be filed under seal.

For example, the Skolnicks’ written response to the motion for leave to file a counterclaim attacked the timeliness of the proposed pleading. While pertinent to the threshold determination of whether the counterclaim may be filed (
Hutchinson v. Brotman-Sherman Theatres, Inc.
, 94 Ill. App. 3d 1066, 1073 (1981); 735 ILCS 5/2–608 (West 1998)), the timeliness of the pleading is irrelevant to the decision to place a document under seal.

 Additionally, the Skolnicks challenged the merits of the counterclaim, including whether the purportedly “bad acts” of Kenneth Skolnick described in the counterclaim were alleged merely to “insulate [Kass] and her counsel in the subsequent publication of those ‘bad acts’ allegations.” The Skolnicks argued that the counterclaim was subject to being stricken “as scandalous and irrelevant,” pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 1998)).

 We are not sure what the Skolnicks intended by their reference to Kass’ alleged attempt to “insulate” herself and her attorney. In any event, the Skolnicks’ attack on the legal sufficiency of the counterclaim, when Kass was merely seeking leave to file the pleading, was premature. As the Skolnicks conceded, the proper vehicle to challenge the merits of the counterclaim is a separate section 2–615 motion, properly filed after leave was given to file the counterclaim. 735 ILCS 5/2–615 (West 1998).

Next, the Skolnicks argued that Kass’ motion to file a counterclaim was really an indirect threat to expose Kenneth Skolnick’s alleged misbehavior and to report that behavior to the ARDC. In the Skolnicks’ view, Kass was attempting to use the counterclaim to intimidate the Skolnicks and thereby gain an advantage over the Skolnicks in this lawsuit. The Skolnicks correctly observe that an attempt by a lawyer to blackmail an opponent through the threatened use of ARDC proceedings violates the Rules of Professional Conduct. 134 Ill. 2d R. 1.2(e).

Perhaps the circuit court was persuaded that the counterclaim was filed solely to intimidate the Skolnicks. If so, the circuit court’s ruling constituted an abuse of its discretion. Upon review of Kass’ counterclaim, we find that, facially, the pleading appears to state cognizable causes of action. In any event, we do not find the pleading frivolous, or without any independent merit.

If the circuit court placed the counterclaim under seal in order to save the Skolnicks from embarrassment, then this, too, would constitute an abuse of discretion. The mere fact a person may suffer embarrassment or damage to his reputation as a result of allegations in a pleading does not justify sealing the court file. In 
Doe v. Doe
, 282 Ill. App. 3d 1078 (1996), a minor plaintiff filed an action against her uncle, accusing him of sexually molesting the plaintiff. The defendant requested a court order that the lawsuit proceed with the use of pseudonyms for the parties. Pursuant to section 2–401(e) of the civil procedure code (735 ILCS 5/2–401(e) (West 1998)), defendant argued, fictitious names could be employed upon a showing of  “good cause.” The defendant further alleged that exposure of his true identity would damage his reputation and his family, and therefore, good cause existed to conceal the parties’ names.

The appellate court ruled that the parties would not be allowed to use pseudonyms merely to save the reputation of defendant and his family from potential harm. 
Doe
, 282 Ill. App. 3d at 1088. In pertinent part, the court observed that in many lawsuits, plaintiffs place a defendant’s reputation at risk merely by alleging that the defendant is guilty of negligence or misconduct. In the broadest sense, any lawsuit could be viewed as “a bad-faith tactic to induce settlement and reap economic gain at the defendant’s expense through baseless allegations.” 
Doe
, 282 Ill. App. 3d at 1088. Therefore, the alleged harm identified by the defendant was too commonplace to amount to a showing of  “good cause.”

We find the holding of 
Doe
 analogous to the instant appeal. Allegations of a complaint are, by their very nature, likely to be critical in some fashion of the defendant named in the pleading. The mere fact that allegations stated in a counterclaim might embarrass the counterdefendant do not, therefore, amount to an “improper purpose” in filing the pleading. See also 
Coe v. County of Cook
, 162 F.3d 491, 498 (7th Cir. 1998).

Lastly, the appellate court held that the counterclaim was properly placed under seal because it references financial records belonging to the Skolnicks. 303 Ill. App. 3d at 32. Relying on 
Statland v. Freeman
, 112 Ill. 2d 494 (1986), the appellate court stated that to prevent abuse of sensitive information, such as financial records, we should not lightly interfere with the trial court’s decision to place those documents under seal. 303 Ill. App. 3d at 32. We agree with the general proposition stated by the appellate court, yet we disagree with the proposition as applied in this case.

 In 
Statland
, a party sought leave to disclose confidential financial records released during discovery in one case as discovery in another lawsuit. The circuit court refused. This court affirmed the circuit court’s order. The court held that Rule 201 invested the circuit court with discretion to set the parameters of a protective order, and that this court found no basis to conclude the circuit court abused that discretion. 
Statland
, 112 Ill. 2d at 499.

In the instant appeal, however, the document at issue is a pleading, not information released during discovery for the sole purpose of discovery. As stated in 
Johnson
, once filed with the court, a pleading becomes part of the public record. 
Johnson
, 232 Ill. App. 3d at 1074. Further, discovery is distinct from documents that are filed with the court. By its nature, discovery is intentionally broad in scope: it is intended to reveal not only facts admissible at trial, but also facts that may lead to admissible evidence. 
Monier v. Chamberlain
, 35 Ill. 2d 351, 357 (1966); see also 
Seattle Times Co. v. Rhinehart
, 467 U.S. 20, 32-33, 81 L. Ed. 2d 17, 26-27, 104 S. Ct. 2199, 2207-08 (1984) (“[Discovery is] not open to the public at common law [citation], and, in general, [it is] conducted in private as a matter of modern practice. [Citation.] Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information”). Thus, it is important that a trial court be permitted to shield sensitive information from public view, so that the parties can marshal evidence in support of their cases, and determine which issues should be pursued, and which should be abandoned.

By contrast, once filed, the pleadings, motions and other papers filed with the court assume the presumption of public access explained above. As the Seventh Circuit Court of Appeals stated recently, “Litigation is a public exercise; it consumes public resources. It follows that in all but the most extraordinary cases–perhaps those involving matters of weighty national security–complaints must be public.” 
Levenstein v. Salafsky
, 164 F.3d 345, 348 (7th Cir. 1998).

More importantly, the Skolnicks’ response to Kass’ motion for leave to file a counterclaim never mentions the fact that the counterclaim relied on financial records as a reason to deny leave to file. While we are willing to speculate as to whether the trial court relied on arguments that the Skolnicks actually raised below, we will not assume that the trial court based its ruling on arguments that the Skolnicks never articulated before the trial court. Therefore, to the extent the Skolnicks now rely on a “financial records” argument to keep the counterclaim under seal, that argument has been waived.

We also conclude that the Skolnicks have waived any challenge to Kass’ standing to pursue this appeal. The appellate court questioned Kass’ standing to assert the common law right of access to court records (303 Ill. App. 3d at 32), although the appellate court cited no authority to support that conclusion. Regardless, standing is an affirmative defense (
Glisson v. City of Marion
, 188 Ill. 2d 211, 221 (1999)). The Skolnicks have not challenged Kass’ alleged lack of standing–on any ground–before the trial court or this court, and we cannot discern whether the Skolnicks initiated the argument before the appellate court. We will not supply contentions not advanced by the parties and, accordingly, deem the argument waived.

 In the absence of an “improper purpose” or “compelling interest” identified by the Skolnicks or the trial court, we conclude that the trial court abused its discretion by placing the counterclaim under seal. We vacate the trial court order barring public access to the counterclaim and remand the case for further proceedings.

CONCLUSION

For the reasons stated above, we affirm the judgment of the appellate court reversing the trial court’s refusal to modify the protective order. We reverse that part of the appellate court judgment affirming the trial court’s order to place the counterclaim under seal. We reverse the judgment of the circuit court and remand this cause for further proceedings consistent with this opinion.

Appellate court reversed in part

and affirmed in part;

circuit court judgment reversed;

cause remanded.

FOOTNOTES
1:     
1
Kass’ counsel in this lawsuit, Sonnenschein Nath & Rosenthal (Sonnenschein), filed a separate notice of interlocutory appeal to the appellate court. 303 Ill. App. 3d 27. Kass and Sonnenschein asserted substantially similar arguments before the appellate court. Sonnenschein is an appellee to one (Docket No. 87320) of the two appeals consolidated before this court. In the interest of brevity, the arguments asserted below by Kass and Sonnenschein will be identified here as arguments by Kass, only.

2:     
2
At least one commentator has remarked on the similarity between the common law and first amendment presumptions favoring public access to court records. 
Sealed Documents
, 81 Ill. B.J. at 457. This writer suggests that the difference between the standards lies in their application: “First, a constitutional right of access, unlike the common law right, cannot be modified by legislation or court rule. Second, an appellate court must review a denial of the [f]irst [a]mendment right more closely than it does a denial of the common law right, which is subject only to the ‘abuse of discretion’ standard.” 
Sealed Documents
, 81 Ill. B.J. at 457-58.