NOTICE

Decision filed 10/31/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0314

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| JESSICA HALL, Individually and on Behalf of Others Similarly Situated, | ) Appeal from the<br>) Circuit Court of<br>) Madison County. |
|     Plaintiffs-Appellees, | ) |
| | ) |
| v. | ) No. 04-L-113 |
| | ) |
| SPRINT SPECTRUM L.P., d/b/a SPRINT PCS GROUP, and SPRINTCOM, INC., d/b/a SPRINT PCS GROUP, | )<br>)<br>)<br>) Honorable<br>) Nicholas G. Byron, |
|     Defendants-Appellants. | ) Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Jessica Hall, individually and on behalf of others similarly situated, filed suit against defendants, Sprint Spectrum L.P., doing business as Sprint PCS Group, and SprintCom, Inc., doing business as Sprint PCS Group. The parties stipulated to a protective order entered by the circuit court of Madison County. Pursuant to a motion by plaintiff, the circuit court later modified the protective order. On appeal, defendants raise issues regarding whether the trial court erred in modifying the protective order. We affirm and remand.

FACTS

Plaintiff filed suit alleging the abuse of an "Early Termination Fee" (ETF). The ETF was a part of a contract to provide cellular phone service. Under the terms of the contract, a customer is obligated to pay the ETF if he or she chooses to end the contract before the expiration of an agreed period of service. Defendants contend that the ETF is a valid part of a term rate plan. Plaintiff contends that the ETF operates as an unlawful penalty to

1

prevent cancellation.

Plaintiff won class certification and thereafter sought voluminous discovery. Defendants contended that plaintiff sought the discovery of proprietary documents reflecting revenues, pricing information, systems, and business strategy. The parties entered into a stipulated protective order under which either party could label documents as "Confidential" or "Attorneys [*sic*] Eyes Only." The protective order limited access to the documents according to how they were labeled and provided that the labeled documents were to be used solely for the lawsuit.

In a separate lawsuit, a South Carolina state court directed a different telecommunications provider to file a petition before the Federal Communications Commission (FCC) seeking a declaratory ruling on whether a fee is a "rate charged" under the Federal Communications Act of 1934 (47 U.S.C. §332 *et seq.* (2000)). Neither plaintiff nor defendants are parties to the South Carolina suit. After the petition was filed, the Cellular Telecommunications and Internet Association (CTIA) filed a similar petition with the FCC. Defendants contend that the CTIA is a trade association representing virtually all wireless service providers and manufacturers, approximately 139 member organizations and 102 associate member organizations.

Plaintiff filed a motion to set aside and stay the protective order, alleging that the CTIA was acting on behalf of defendants in the petition for a declaratory ruling and that the discovery in this case contradicted the positions taken by Sprint and the CTIA in the FCC filings. Defendants are members of the CTIA.

On May 20, 2005, the court entered an order granting plaintiff's motion:

"Parties present by counsel[,] and after oral argument the Court grants plaintiff's motion and vacates the Stipulated Protective Order. However, plaintiff is restricted in the use of confidential or 'attorneys [*sic*] eyes only' documents for

2

purposes of submitting public comment and otherwise responding to the FCC matter styled WT Docket No. 05-193."

Defendants filed a motion to stay and requested leave to appeal. On May 25, 2005, the court ordered:

"However, the court[,] being mindful of [d]efendants' position with respect to protection of its trade secrets and proprietary information, modifies its order of 5/20/05 vacating the Stipulated Protective Order by requiring [p]laintiff to identify the documents, pleadings, or other discovery in this case produced by [d]efendants that she intends to submit to the FCC prior to their submissions. Defendants shall have 24 hours therefrom to review said material and bring to the court's attention any objections based upon protection of their trade secrets and proprietary information. The court will make itself available to the parties to address objections by [d]efendants. Plaintiff is granted leave to file a written response to [d]efendants' Stay Motion by 5/26/05."

Defendants appeal pursuant to Supreme Court Rule 307(a) (188 Ill. 2d R. 307(a)).

ANALYSIS

Supreme Court Rule 201(c) (166 Ill. 2d R. 201(c)) gives trial courts the authority to enter protective orders. The rule is a part of a comprehensive scheme for discovery. 166 Ill. 2d R. 201(c); *Kunkel v. Walton*, 179 Ill. 2d 519, 531, 689 N.E.2d 1047, 1052 (1997). The proper use of the rule requires a flexible application. *Avery v. Sabbia*, 301 Ill. App. 3d 839, 845, 704 N.E.2d 750, 754 (1998). Supreme Court Rule 201(c) provides:

"**(c) Prevention of Abuse**.

(1) *Protective Orders*. The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent

3

unreasonable annoyance, expense, embarrassment, disadvantage, or oppression.

(2) *Supervision of Discovery*. Upon the motion of any party or witness, on notice to all parties, or on its own initiative without notice, the court may supervise all or any part of any discovery procedure." 166 Ill. 2d R. 201(c).

As noted above, the parties stipulated to a protective order. Stipulations are a useful tool and tend to have the same binding effect as contracts made outside the context of a lawsuit. Defendants contend the protective order, as a stipulation, should only be set aside if it is inherently unreasonable, illegal, or fraudulent. See *Strozewski v. Sherman Equipment Co.*, 76 Ill. App. 3d 266, 270, 395 N.E.2d 38, 41 (1979); *Kazubowski v. Kazubowski*, 93 Ill. App. 2d 126, 134, 235 N.E.2d 664, 668 (1968). They assert that the parties are bound by the language of the agreement and that our review should be *de novo*. *In re Marriage of Sanborn*, 78 Ill. App. 3d 146, 149, 396 N.E.2d 1192, 1195 (1979).

Defendants' contention that this action should be treated as a contract dispute fails to consider the role a protective order plays in litigation and the discretion given to trial courts in overseeing discovery. Protective orders are a part of the arsenal of tools a court may use to oversee discovery and prevent harassment. *Kunkel*, 179 Ill. 2d at 531, 689 N.E.2d at 1052; see *International Truck & Engine Corp. v. Caterpillar, Inc.*, 351 Ill. App. 3d 576, 580, 814 N.E.2d 182, 185 (2004) (discussing the use of a protective order for confidential commercial information). The nature of a protective order depends on the facts of the particular case. See *Bush v. Catholic Diocese of Peoria*, 351 Ill. App. 3d 588, 591, 814 N.E.2d 135, 137 (2004); *May Centers, Inc. v. S.G. Adams Printing & Stationery Co.*, 153 Ill. App. 3d 1018, 1021, 506 N.E.2d 691, 694 (1987).

Similar to other discovery matters, the trial court is in the best position to weigh the competing needs and interests of the parties affected by a protective order. *Avery*, 301 Ill.

4

App. 3d at 845, 704 N.E.2d at 754. Absent an abuse of discretion, an order concerning discovery will not be disturbed on appeal (*Pickering v. Owens-Corning Fiberglas Corp.*, 265 Ill. App. 3d 806, 823, 638 N.E.2d 1127, 1139 (1994)), and protective orders are no exception. *Avery*, 301 Ill. App. 3d at 845, 704 N.E.2d at 754; see *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943, 944 (7th Cir. 1999) (criticizing the excessive use of protective orders as an umbrella); *San Jose Mercury News, Inc. v. United States District Court–Northern District (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999) (blanket protective orders should be inherently subject to challenge due to the lack of a particularized showing regarding individual documents).

The Illinois Supreme Court has addressed the discretion given to trial courts to modify protective orders. *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 730 N.E.2d 4 (2000). In *Skolnick*, an attorney filed suit against former fellow employees and alleged they had falsely accused him of fabricating a document that had been the subject of an investigation before the Attorney Registration and Disciplinary Commission (ARDC). The circuit court entered an agreed protective order regarding discovery. One of the defendants moved to modify the order, arguing that documents obtained in discovery showed that Skolnick had engaged in misconduct and that the documents should be disclosed to the ARDC. *Skolnick*, 191 Ill. 2d at 219, 730 N.E.2d at 10; see 134 Ill. 2d R. 8.3(a); *In re Himmel*, 125 Ill. 2d 531, 539, 533 N.E.2d 790, 793 (1988). The defendant also sought leave to file a counterclaim incorporating and attaching the documents. The circuit court denied the motion to modify and ordered that the counterclaim be filed under seal.

The supreme court ruled that the trial court erred by not modifying the protective order. The court began by noting that trial courts have considerable discretion to supervise discovery. *Skolnick*, 191 Ill. 2d at 223, 730 N.E.2d at 12. In discussing Rule 201(c), the court stated, "The flexibility enjoyed by trial courts in directing discovery extends to the

5

entry of protective orders." *Skolnick*, 191 Ill. 2d at 223, 730 N.E.2d at 12. The court stated that the parameters of protective orders are left to a trial court's discretion; nonetheless, the court found that by failing to modify the protective order, the trial court had abused its discretion. Because the trial court had failed to state any reasons for not modifying the protective order, the interests of justice weighed in favor of a modification to allow the disclosure to the ARDC. *Skolnick*, 191 Ill. 2d at 226, 730 N.E.2d at 14.

Defendants contend that *Skolnick* is limited to situations in which a stipulation conflicts with a higher duty to report unethical conduct. This ignores the general import of *Skolnick*. First, the supreme court made clear that a trial court has discretion in overseeing a protective order. Thus, contrary to the position argued by defendants on appeal, the modification should only be reversed if the trial court abused its discretion. Second, by modifying the protective order on appeal, the supreme court applied the plain language of Rule 201(c). *Skolnick* describes the "broad discretion" given to the trial court under Supreme Court Rule 201(c) to prevent abuse (166 Ill. 2d R. 201(c), Committee Comments, at lviii-lix). *Skolnick*, 191 Ill. 2d at 223, 730 N.E.2d at 12; see *Stowers v. Carp*, 29 Ill. App. 2d 52, 69, 172 N.E.2d 370, 378 (1961). The court concluded that the trial court erred because "the interests of justice weigh decidedly in favor" of a modification. *Skolnick*, 191 Ill. 2d at 226, 730 N.E.2d at 14. In other words, a modification is appropriate "as justice requires." 166 Ill. 2d R. 201(c)(1).

This case involves a collateral proceeding before a federal commission. The federal courts have provided guidance for this situation. In *Jepson, Inc. v. Makita Electric Works, Ltd.*, 30 F.3d 854 (7th Cir. 1994), a modification was sought for the purpose of using discovered documents in collateral proceedings before the United States International Trade Commission (ITC). Jepson, Inc., filed an action under the Racketeer Influenced and Corrupt Organizations Act (RICO) against Makita Electric Works, Ltd. (Makita), in the course of

6

which a vice president of Black & Decker Corp. (Black & Decker) was deposed. Makita and Black & Decker entered into a stipulated protective order. Subsequently, Black & Decker filed a petition with the ITC alleging Makita was dumping professional power tools in the United States. Makita referred to the vice president's RICO action deposition in proceedings before the ITC. Pursuant to Black & Decker's motion, the United States District Court for the Northern District of Illinois sanctioned Makita's counsel for violating the protective order. *Jepson, Inc.*, 30 F.3d at 857.

The Seventh Circuit noted a growing trend in both federal and state courts to seal documents produced during discovery. The court observed that stipulated protective orders placed a trial court in an unusual position. Although judges usually ratify agreements between parties, under federal rules a protective order should only be entered upon a showing of good cause. *Jepson, Inc.*, 30 F.3d at 858; Fed. R. Civ. P. 26(c). The district court had failed to make a finding of good cause. In addition, the Seventh Circuit noted there was no indication that the deposition had been reviewed to determine whether it contained confidential information. After reviewing the submitted deposition testimony, the court found there were no trade secrets or confidential information. The court reversed the sanctions:

> "Black & Decker has tried to use the stipulated protective order and the [interim protective order] as shields to prevent highly relevant and nonconfidential information from reaching the ITC. We refuse to assist Black & Decker with its effort. Black & Decker has completely failed to show 'good cause' for the protective order, in so far as the like-product portion of Galli's deposition is concerned. Therefore, we reverse the district court's imposition of sanction's [*sic*] against Makita's counsel." *Jepson, Inc.*, 30 F.3d at 860.

The court then addressed Makita's motion to modify the interim protective order.

7

*Jepson, Inc.* reiterated the proposition that discovery should take place in public:

> " 'This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process.' " *Jepson, Inc.*, 30 F.3d at 860-61 (quoting *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980)).

*Jepson, Inc.* held that the reasons for modifying a protective order when there is concurrent litigation applied to the hearings before the ITC. Thus, the district court erred by not granting the motion to modify:

> "Galli's deposition is relevant to an issue pending before the ITC and is thus discoverable by the ITC. Accordingly, like the situation in *Wilk*, the district court's refusal to modify the protective order forces Makita and the ITC to duplicate discovery that has already been made. As we indicated in *Wilk*, such unnecessary duplication is wasteful.
>
> Duplication of discovery may be excused, however, if modification of the protective order will 'tangibly prejudice substantial rights of the party opposing modification.' *Wilk*, 30 F.2d at 1299. Black & Decker has made no showing that its substantial rights will be prejudiced by modifying the [interim protective order] to allow Galli's deposition to be used in the ITC proceedings. For instance, Black & Decker does not claim that Galli's deposition is privileged from discovery by Makita or the ITC." *Jepson, Inc.*, 30 F.3d at 861.

In the case at hand, defendants contend that a modification of the protective order is unnecessary because the FCC has subpoena powers. See 47 U.S.C. §409(e) (2000). This does not distinguish *Jepson, Inc.*, which noted that the ITC had similar powers. *Jepson, Inc.*,

8

30 F.3d at 861; 19 U.S.C. §§1333(a)(1), (d) (1994). Instead, the test is whether the modification would tangibly prejudice the substantial rights of a party. *Jepson, Inc.*, 30 F.3d at 861.

Under the powers and duties noted in *Skolnick* and considering the persuasive reasoning and example in *Jepson, Inc.*, the trial court correctly modified the protective order. In modifying the protective order to allow for the submission of documents to the FCC while maintaining a procedure for contesting the disclosure of particular documents, the trial court made an appropriate modification, exercising its discretion to modify the protective order as justice requires. See 166 Ill. 2d R. 201(c).

## CONCLUSION

Accordingly, the order of the circuit court modifying the protective order is affirmed, and the matter is remanded for enforcement pursuant to Supreme Court Rule 201(c) (166 Ill. 2d R. 201(c)).

Affirmed; cause remanded with directions.

CHAPMAN and McGLYNN, JJ., concur.