598 N.E.2d 406 (1992)
232 Ill. App.3d 1068
174 Ill.Dec. 209
In re: the Marriage of Frank JOHNSON, Petitioner-Appellee, and
Teri Johnson, Respondent-Appellee (Professional Impressions Media Group, Inc., d/b/a The News-Gazette, Intervenor-Appellant; Beckett, Crewell & Kelso, P.C., Intervenor-Appellee).
Frank JOHNSON, Plaintiff-Appellee,
v.
TURNER CONSTRUCTION COMPANY, Defendant-Appellee (Professional Impressions Media Group, Inc., d/b/a The News-Gazette, Intervenor-Appellant; Beckett, Crewell & Kelso, P.C., Intervenor-Appellee).
No. 4-92-0133.
Appellate Court of Illinois, Fourth District.
August 13, 1992.
*407 Richard L. Thies, Webber & Thies, P.C., Urbana, for appellant.
Ted Crewell, Beckett, Crewell & Kelso, P.C., Urbana, for appellee Beckett, Crewell & Kelso.
Justice KNECHT delivered the opinion of the court:
This appeal raises the issue of the public's right of access to trial court records and transcripts. The questions presented are whether what goes on in court is the people's business, and what burden is placed on those who seek to restrict access to public records. Professional Impressions Media Group, Inc., d/b/a the News-Gazette (News-Gazette), appeals the trial court's orders impounding certain court records and transcripts in Johnson v. Turner Construction Co. (Cir.Ct. Champaign Co.), No. 88-L-409 (hereinafter the personal injury case), and In re Marriage of Johnson (Cir.Ct. Champaign Co.), No. 88-C-1019 (hereinafter the dissolution case), and its later orders upholding the impoundments. We reverse.
On April 20, 1988, Frank and Teri Johnson filed a personal injury action against Turner Construction Company as a result of an injury to Frank (the personal injury case). Teri's loss of consortium claim was voluntarily dismissed, and the case was eventually settled on October 16, 1991. A condition of the settlement was that its terms were to remain confidential. The terms of the settlement were, however, recited to the court, but the actual settlement document did not become part of the court record. The case was then dismissed with prejudice.
On December 27, 1989, in the dissolution case, the court granted Frank and Teri Johnson a dissolution of marriage and reserved ruling on ancillary matters. On May 1, 1990, the court entered judgment as to the ancillary matters. The court found the personal injury claim against Turner Construction was marital property, but since it was then being litigated, it reserved ruling on the distribution of that property until such time as funds were received. On December 3, 1991, the parties in the dissolution case presented a settlement to the court relating to the distribution of the settlement proceeds from the personal injury case. The settlement included a term that all documents in the entire file were to be sealed. After reciting the specifics of the settlement, the court was asked to impound the file. The court approved the settlement and ordered "[t]he court file, all enclosures and exhibits therein [be] impounded, and access thereto [would] be only by permission and order of the court." The court also entered a docket entry in the personal injury case stating the "settlement agreement of the parties upon their motion and by agreement [was] [t]hereby ordered impounded."
Following the orders of December 3, 1991, the News-Gazette orally requested the court to grant it access to all materials impounded by the December 3, 1991, orders. The court, on its own motion, set the *408 matter for hearing to show cause on whether the impoundment order should be continued or vacated.
After hearing the arguments, the court maintained the impoundment in the dissolution case "was an essential part of the settlement * * * stemming from the confidentiality and impoundment of the settlement" in the personal injury case. The court maintained the property settlement took into consideration the confidentiality of the personal injury settlement and was also based upon an understanding of the parties that all claims would be settled in the two cases. It asserted it could not "vacate the impoundment without significantly changing the terms of the settlement in [the dissolution case]." The impoundment, however, was narrowed. All materials dated October 16, 1991, and thereafter were impounded by order of the court, and the previous impoundment order impounding materials dated prior to October 16, 1991, was vacated. The court also noted the impoundment order in the personal injury case relating to the settlement and the settlement agreement remained in effect.
On January 27, 1992, the News-Gazette filed a petition to intervene and for application for access to court records, documents, and transcripts in the two cases. The court allowed it to intervene for the limited purpose of determining its right of access to court records, documents and transcripts impounded by the court's December 3, 1991, orders. The court held a hearing on January 29, 1992, and after reconsidering its prior rulings issued an order upholding the impoundment in the dissolution case on February 6, 1992. It gave no opinion as to the impoundment in the personal injury case because the court was under the impression the News-Gazette was not pursuing a disclosure of the terms of that settlement.
On February 13, 1992, the court entered a corrected order. In its corrected order, the court stated the News-Gazette had not abandoned its petition for disclosure of the settlement agreement in the personal injury case. It explained the impoundment orders implicitly included transcripts of hearings "in connection with the materials impounded because they were inextricable from those materials." It emphasized no gag order had been issued, and therefore no first amendment issue was present. It further stated the impoundment order in the dissolution case was entered after all parties reached an agreement about pending claims and included in the agreement a request for impoundment. The request was an "integral part of the agreement, which was meant to and did dispose of issues ancillary to the dissolution of the marriage." The court granted the request and the settlement was executed. Similarly, in the personal injury case, the parties reported a settlement and requested impoundment of the terms of it, which it granted. It noted "[t]he faith of the parties and the attorneys would be broken if now the court took away the impoundment upon which they relied in concluding their settlements." After reviewing the law, the court, notwithstanding the strong presumption favoring public access to judicial records, found no "legal basis for requiring it to break faith with the parties and the attorneys on their agreements." The impoundment orders remained in effect and this appeal followed.
The News-Gazette challenges the impoundment orders by asserting a public right of access to the court records and transcripts in the two cases based on the common law, statutory provisions, and the first amendment. It argues the court abused its discretion in refusing to vacate its impoundment orders because the presumption of public access had not been overcome and because the court gave no specific factual findings in support of its order. It also asserts a confidentiality agreement between the parties in the two cases is insufficient to support the impoundment orders. We agree.

I. COMMON LAW
In Nixon v. Warner Communications, Inc. (1978), 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 579, the Supreme Court recognized a general common *409 law right of access to public records and documents, including judicial records, existed. Under this right, "a presumption in favor of access arises" (Minneapolis Star & Tribune Co. v. Schumacher (Minn. 1986), 392 N.W.2d 197, 202; see also Maron, 435 U.S. at 602, 98 S.Ct. at 1314, 55 L.Ed.2d at 582) and establishes, as a general matter, that court files should be open to the public for inspection and copying (United States v. Corbitt (7th Cir.1989), 879 F.2d 224, 228). Although the common law right of access exists, a court has certain inherent power to control its records, and thus, the right to inspect public records is not absolute. (Deere & Co. v. Finley (1981), 103 Ill.App.3d 774, 776, 59 Ill.Dec. 444, 446, 431 N.E.2d 1201, 1203; see also Marora, 435 U.S. at 598, 98 S.Ct. at 1312, 55 L.Ed.2d at 580.) This power has been held, in the proper case, to be superior to a public right of access to court records. See, e.g., JFS v. ABMJ (1983), 120 Ill.App.3d 261, 263, 75 Ill.Dec. 908, 910-11, 458 N.E.2d 76, 78-79, overruled on other grounds (1989), 127 Ill.2d 247, 263, 130 Ill.Dec. 225, 232, 537 N.E.2d 292, 299.
In Illinois, this common law right seems to have been codified in section 16 of the Clerks of the Courts Act, which provides:
"Such other books of record and entry as are provided by law, or may be required in the proper performance of their duties. All records, dockets and books required by law to be kept by such clerks shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records, docket and books, and also to all papers on file in the different clerks' offices and shall have the right to take memoranda and abstracts thereto." Ill.Rev.Stat.1989, ch. 25, par. 16(6).
This statute generally grants free access to public records. (Deere, 103 Ill. App.3d at 776, 59 Ill.Dec. at 446, 431 N.E.2d at 1203.) It "symbolizes the legislature's determination that the public interest is best served by increasing the public's knowledge about what is transpiring inside the judicial process." (Newell v. Field Enterprises, Inc. (1980), 91 Ill.App.3d 735, 748, 47 Ill.Dec. 429, 441, 415 N.E.2d 434, 446.) The existence of this statute permitting access to judicial records does not, however, abrogate the trial court's inherent power to control its files and to impound any part of a file in a particular case. Deere, 103 Ill.App.3d at 776, 59 Ill.Dec. at 446, 431 N.E.2d at 1203.
When a party seeks to restrict access to judicial records, the court must balance those interests supporting access, including the "presumptionhowever gaugedin favor of public access to judicial records" (Marora, 435 U.S. at 602, 98 S.Ct. at 1314, 55 L.Ed.2d at 582), against those interests asserted for restricting access. (Minneapolis, 392 N.W.2d at 202-03.) In order to overcome the presumption of access, the moving party bears the burden of establishing a compelling interest why access should be restricted and that the protective order is drafted "in the manner least restrictive of the public's interest." (Shenandoah Publishing House, Inc. v. Fanning (1988), 235 Va. 253, 259, 368 S.E.2d 253, 256.) The decision as to access is "left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." (Nixon, 435 U.S. at 599, 98 S.Ct. at 1312-13, 55 L.Ed.2d at 580.) Appellate review of this determination is limited to whether the trial judge considered relevant factors in making the determination and whether he gave those factors appropriate weight (United States v. Guzzino (7th Cir.1985), 766 F.2d 302, 304), in short, whether there was an abuse of discretion.

II. FIRST AMENDMENT
The Supreme Court has never explicitly recognized the existence of a first amendment right of access to court records of civil proceedings. It has, however, recognized that implicit in the guarantees of the first amendment is the constitutional right of access to criminal trials (Richmond Newspapers, Inc. v. Virginia (1980), 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 *410 L.Ed.2d 973, 991-92 (opinion of Burger, C.J.); Globe Newspaper Co. v. Superior Court (1982), 457 U.S. 596, 603-07, 102 S.Ct. 2613, 2618-20, 73 L.Ed.2d 248, 255-57) and certain preliminary proceedings in criminal cases (Press-Enterprise Co. v. Superior Court (1984), 464 U.S. 501, 508-10, 104 S.Ct. 819, 823-24, 78 L.Ed.2d 629, 637-38; Press-Enterprise Co. v. Superior Court (1986), 478 U.S. 1, 10, 106 S.Ct. 2735, 2741, 92 L.Ed.2d 1, 11). In determining whether the first amendment right of access extends to a particular type of proceeding, the Supreme Court considers "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." Press-Enterprise, 478 U.S. at 8, 106 S.Ct. at 2740, 92 L.Ed.2d at 10.
Several courts have extended the Supreme Court's analysis of the constitutional right of access to criminal trials to judicial records of civil cases, and thus have found a constitutional right of access to civil court files based on the first amendment. (See, e.g., Wilson v. American Motors Corp. (11th Cir. 1985), 759 F.2d 1568, 1570-71; In re Continental Illinois Securities Litigation (7th Cir.1984), 732 F.2d 1302, 1308-09; Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n (6th Cir.1983), 710 F.2d 1165, 1177-79; Publicker Industries, Inc. v. Cohen (3d Cir.1984), 733 F.2d 1059, 1067-71; Rushford v. New Yorker Magazine, Inc. (4th Cir.1988), 846 F.2d 249, 253.) As under the common law standard, a presumption in favor of access exists. (Minneapolis, 392 N.W.2d at 203.) This presumption, along with any other interest asserted in favor of access, are balanced against those interests asserted for denying access. (Minneapolis, 392 N.W.2d at 203; see also Continental, 732 F.2d at 1313-16.) In order to overcome the presumption in favor of access, a party must demonstrate a compelling governmental interest exists, and the restrictions on access are narrowly tailored to meet this governmental interest. (Minneapolis, 392 N.W.2d at 203.) Only then may access be restricted.

III. ANALYSIS
We must first determine whether the right of access, grounded upon either the first amendment or the common law, applies to certain documents. The News-Gazette seeks access to the complete court file, including the settlement agreement and the transcripts of hearings, in the dissolution case, as well as the complete court file, including the transcripts of the parties' settlement agreement presented in court and the written settlement agreement, in the personal injury case. We hold the right of access extends to the documents filed with the court, including the settlement agreement in the dissolution case. (See generally Continental, 732 F.2d at 1308-09; Corbitt, 879 F.2d at 228; Bank of America National Trust & Savings Association v. Hotel Rittenhouse Associates (3d Cir.1986), 800 F.2d 339, 345; Shenandoah, 235 Va. at 258, 368 S.E.2d at 255-56; Mokhiber v. Davis (D.C.1988), 537 A.2d 1100, 1111-13, Federal Trade Comm'n v. Standard Financial Management Corp. (1st Cir.1987), 830 F.2d 404, 409; contra Minneapolis, 392 N.W.2d at 204-05.) Once documents are filed with the court, they lose their private nature and become part of the court file and "public component[s]" of the judicial proceeding (Rittenhouse, 800 F.2d at 343-44) to which the right of access attaches. This right also applies to transcripts of hearings as they are records of trial court proceedings. This right, however, does not extend to the settlement document in the personal injury case because it was never submitted to the court, although the transcript of the hearing at which its terms were recited is subject to the right of access.
The most direct expression of this right of access may be stated this way the court is a part of government and what goes on in court is the business of the people. Courts function best and most effectively when they are open to the public view. When courts are open, their work is observed and understood, and understanding leads to respect. The file of a *411 court case is a public record to which the people and the press have a right of access.
Since we find the right of access attaches to the documents filed with the court and the transcripts, we turn next to consider whether the judge abused his discretion in denying access to those documents. Once documents are subject to the right of access, only a compelling reason, accompanied by specific factual findings, can justify keeping them from public view. Under either a common law or first amendment analysis, we find the trial court abused its discretion by denying access to the court records and transcripts in the two proceedings. In this case, there is no compelling interest in barring public access to the court files and transcripts. The parties' desire and agreement that the court records were to be sealed falls far short of outweighing the public's right of access to the files. We need not discuss what would be sufficient to overcome the presumption of access because it is enough for this case to note the desire of litigants to restrict public access to judicial records is not sufficient to override this presumption. Courts cannot honor such requests without seriously undermining the tradition of an open judicial system. Since no legally sufficient reason for the impoundment of the records has been presented, the entry of the impoundment orders and the court's refusal to vacate the orders were an abuse of discretion.
The orders of the trial court are reversed.
Reversed.
LUND, J., concurs.
STEIGMANN, J., specially concurs.
Justice STEIGMANN, specially concurring:
Although I concur fully with the judgment of the majority, I write specially to emphasize that, in my judgment, this is not a close case. In its opinion, the majority three times indicates that the party seeking to bar access to court records bears the burden of establishing "a compelling interest," "a compelling governmental reason," or "a compelling reason" why access should be restricted. (232 Ill.App.3d at 1072, 1074, 1075, 174 Ill.Dec. at 212, 213, 214, 598 N.E.2d at 409, 410, 411.) The court further correctly notes that even when the moving party has met this heavy burden, the trial court should narrowly tailor any restrictions on access to address the identified compelling interest. (232 Ill. App.3d at 1074, 174 Ill.Dec. at 213, 598 N.E.2d at 410.)
The present case is not close because the only explanation for closure in the record before us is that the parties (or their attorneys) prefer that the public not be permitted access to these files. Whatever the basis for that preferencefacilitating settlement, desire for privacy, possible embarrassment of the partiessuch preference can never demonstrate the compelling interest required to overcome the strong presumption in favor of total access to all documents of whatever nature in a court file. The only documents that could meet that "compelling interest" standard are those which are both privileged and potentially seriously damaging or embarrassing to the person holding the privilege. Examples of such documents that might meet this standard of being both privileged and seriously damaging or embarrassing are psychiatric records revealing aberrational behavior or thinking and the treatment thereof, as well as medical records revealing that a particular person has a sexually transmitted disease.
The court's decision today imposes no undue burden on those litigants who, for whatever reason, wish to keep their personal affairs private. For instance, when a suit for damages is settled, the court does not require a statement as to why and how; instead, the court merely requires an appropriately signed motion to dismiss. The parties to that case are free to make whatever contractual arrangements they wish as part of their settlement agreement and keep it to themselves by simply not making it part of the court record. In the event that a breach of the settlement agreement occurs, then, of course, it must become public. However, such breaches are rare. *412 More importantly, filing the settlement agreement with the court concomitantly with a motion to dismiss does nothing to aid the party alleging breach beyond that which the party can achieve through a properly executed settlement agreement not filed with the court.
Matters publicly testified to (when a transcript of proceedings is or can be made available) and other matters filed with the court become thereby the business of our public system of justice. No litigant, having rendered such matters public, has the right to claim any further privacy interest in them.