KAREN ZIELKE, Adm'r of the Estate of Kristine Hooper, as Assignee of James Speciale, Indiv. and d/b/a Tony and Jim's Place, Plaintiff, v. HOWARD WAGNER *et al.*, Defendants and Third-Party Plaintiffs-Appellants (Coopers and Lybrand L.L.P., *et al.*, Defendants and Third-Party Defendants-Appellees).

Second District   No. 2—96—1248

Opinion filed September 11, 1997.

COLWELL, J., specially concurring.

Julian Johnson, of Waukegan, for appellants.

Sean M. Sullivan, of Epstein, Zaideman & Esrig, P.C., of Chicago, for Karen Zielke.

Richard T. Greenberg and Edward W. Schwartz, both of Ross & Hardies, of Chicago, and Joseph A. Clark III, of Coopers & Lybrand, L.L.P., of New York, New York, for appellee Coopers & Lybrand, L.L.P.

Steven R. Gilford and Kira E. Druyan, both of Mayer, Brown & Platt, of Chicago, for appellee Coopers & Lines.

JUSTICE THOMAS delivered the opinion of the court:

The defendants and third-party plaintiffs, Howard Wagner and Kettner Agency, Inc. (collectively, the broker defendants or brokers), appeal from an order dismissing with prejudice their third-party complaint against the third-party defendants, Coopers & Lybrand L.L.P. (hereinafter Coopers) and Coopers & Lines, d/b/a Coopers & Lybrand, Chartered Accountants (hereinafter Lines) (collectively, the accountant defendants). On appeal, the broker defendants contend that the trial court abused its discretion in subjecting to a protective order a settlement agreement entered into between the plaintiff, Karen Zielke, and the accountant defendants. The broker defendants further contend that the trial court erred in finding that their motion to strike Lines' special and limited appearance was moot. We affirm.

The record reveals that Kristine Hooper died as a result of a fire that destroyed the apartment that she occupied as a tenant of James Speciale. Hooper's apartment was above a tavern known as Tony and Jim's Place, also owned by Speciale. Zielke, as administrator of the estate of Kristine Hooper, filed a wrongful death action against Speciale in the circuit court of Lake County. Speciale then filed for bankruptcy in federal court. In the bankruptcy proceeding, Speciale filed a claim against the broker defendants alleging that they negligently

placed fire and extended coverage insurance with Financial Services Insurance, Ltd. (FSIL), an entity which became insolvent.

Thereafter, Zielke settled her claim in bankruptcy with Speciale and took an assignment from him of all of his claims against the defendants. Speciale's bankruptcy claim was subsequently transferred to the circuit court of Lake County where Zielke presented a motion, as assignee of the claim, to substitute herself as the only plaintiff in the action. Zielke was then granted leave to file a second amended complaint suing the broker defendants, alleging breach of contract and negligence in connection with placing coverage with FSIL and for procuring unreasonably low amounts of insurance. The broker defendants filed a third-party complaint against "Coopers and Lybrand, an international accounting firm," and served summons on Coopers, a Chicago branch. The plaintiff had also sued both Lines and Coopers. Coopers then filed a motion to dismiss, contending that the accounting in question was performed by Lines, a Bermuda firm which is a separate legal entity independent from Coopers. The brokers then filed a first amended third-party complaint against Lines. Lines then filed a special and limited appearance contesting the court's jurisdiction.

The broker defendants served a request to admit facts and genuineness of documents on both Lines and Coopers. Lines obtained an extension of time to April 15, 1996, to respond to the brokers' motion.

In August 1996, the plaintiff agreed to settle her claims against the accountant defendants. On August 19, 1996, the plaintiff and Coopers filed a joint motion pursuant to the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1994)), seeking a finding that the settlement was fair, reasonable, and made in good faith, along with an order dismissing with prejudice all claims against the accountant defendants. Lines did not sign the settlement agreement but was made a third-party beneficiary to it. Coopers also filed a motion for a protective order and for leave to file the settlement under seal alleging that the settlement contains sensitive and confidential information, including the basis upon which the settlement is being consummated.

On August 28, 1996, the trial court entered an order setting a briefing schedule on the request for a good-faith finding and directing the movants to provide a copy of their settlement agreement to the broker defendants but restricting their dissemination of any of the information in the agreement solely to their counsel and their insurer.

Thereafter, the brokers filed objections to the motion for a good-

faith finding and dismissal, along with objections to the motion for a protective order. The brokers also filed a motion to strike Lines' special and limited appearance on the basis that its activities in the case constituted a waiver of its special and limited appearance.

Following a hearing on October 9, 1996, the trial court found that the settlement agreement was fair, reasonable, and had been made in good faith. The court dismissed with prejudice all claims against the accountant defendants, including those raised in the third-party complaint filed by the broker defendants. The court also barred all contribution claims against the defendants, but noted that the amount paid pursuant to the settlement agreement would be a setoff against any judgment the plaintiff might obtain against the brokers. The trial court further ruled that the protective order remain in force until further order of the court. Finally, the court concluded that the brokers' motion to strike Lines' special and limited appearance was moot given the good-faith finding and the order barring contribution claims against the accountant defendants.

On appeal, the brokers argue that the trial court abused its discretion in restricting the dissemination of the information in the accountant defendants' settlement agreement. They contend that the protective order amounted to an unconstitutional prior restraint upon speech in violation of the first amendment to the United States Constitution (U.S. Const., amend. I). They also claim that the protective order unfairly precludes them from using Illinois Pattern Jury Instructions, Civil, Nos. B45.03 and 600.14 (Illinois Pattern Jury Instructions, Civil, Nos. B45.03, 600.14 (3d ed. 1995)), which relate to percentage of comparative negligence.

■ Where a protective order is challenged on appeal as an unconstitutional "prior restraint," the trial court's decision on the matter will not be disturbed on review absent an abuse of discretion such that the court acted arbitrarily without the employment of conscientious judgment and ignored recognized principles of law so that substantial prejudice resulted. *In re J.S.*, 267 Ill. App. 3d 145, 148 (1994). Constitutional questions not presented to the trial court may not be raised for the first time on appeal. *E.J. McKernan Co. v. Gregory*, 252 Ill. App. 3d 514, 534 (1993).

■ In the instant case, the brokers failed to make any argument before the trial court that the protective order violated their first amendment rights. Thus, they failed to afford the trial court any opportunity to employ its discretion. Accordingly, we find that the broker defendants waived the argument. Furthermore, we would reject the brokers' argument on the merits even if they had not waived it. The brokers are unable to articulate any prejudice that they may

have suffered by the imposition of the protective order. The law on prior restraints cited by the brokers is inapplicable. The cases they rely upon involve protective orders restricting dissemination of information relating to the substance of the claims at issue in the case. In contrast, the settlement agreement in the present case, which has been provided to this court under seal, contains nothing that would provide any support for the broker defendants' defense at trial. In that regard, we note that the brokers' defense is that the accountants are responsible for any damages suffered by the plaintiff because the accountants failed to audit properly FSIL's financial statements, thereby misleading the brokers as to FSIL's financial condition and leading them to place Speciale's coverage with FSIL. However, the settlement makes no admissions with respect to the liabilities of the various parties in relation to the accountants' actions in conducting the FSIL audit. The only item of possible interest is the amount of the settlement, but no prejudice will be suffered by the brokers since they will be entitled to a setoff in that amount against any judgment obtained by the plaintiff, and it is axiomatic that the settlement would not be admissible at trial on the question of the accountant defendants' liability or comparative fault. *Barkei v. Delnor Hospital*, 176 Ill. App. 3d 681, 694 (1988).

We also reject the brokers' claim that the protective order effectively precludes them from raising certain jury instructions. The broker defendants correctly note that the order prevents them from mentioning the amount of the settlement or even mentioning the fact of a settlement. These are matters that would not be admissible at trial regardless of the protective order. See *Barkei*, 176 Ill. App. 3d at 694. Moreover, we note that the brokers are not precluded from mentioning any negligent conduct on the part of the accountants in the case. The brokers have simply failed to explain how the protective order would preclude them from utilizing any jury instructions. Additionally, we note that their argument is premature since there has not even been a trial in the matter where the brokers have actually attempted to utilize the instructions.

Since we find that the trial court did not abuse its discretion in imposing the protective order and the broker defendants have not raised any argument on appeal attacking the trial court's dismissal of the third-party claims against the accountants, we find that the issue of whether Lines waived its special and limited appearance is moot.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

RATHJE, J., concurs.

JUSTICE COLWELL, specially concurring:

I concur with the judgment of the majority in that the broker defendants waived their argument concerning the protective order because they failed to bring it before the trial court. Further, I agree with the majority's decision that the trial court did not abuse its discretion in restricting the broker defendants from disseminating the information in the agreement. In writing, however, I point out that had the trial court granted the accountant defendants' request to file the agreement under seal, the right of access would have attached to the agreement.

The United States Supreme Court has recognized a general common-law right of access to public records and documents, including judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 55 L. Ed. 2d 570, 579, 98 S. Ct. 1306, 1312 (1978). This right creates a presumption that court files should be open to the public for inspection and copying. *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989).

A court, however, has the inherent power to control its records, and the right to inspect public records is not absolute. *In re Marriage of Johnson*, 232 Ill. App. 3d 1068, 1072 (1992). Nevertheless, although a court may restrict access to judicial records, a court does not have the inherent power to control its files and to impound any part of a file in a particular case. *Deere & Co. v. Finley*, 103 Ill. App. 3d 774, 776 (1981). Instead, when determining whether to restrict access to judicial records, a court must balance the parties' reasons for restriction with those interests supporting access. *Johnson*, 232 Ill. App. 3d at 1072.

To overcome the presumption of access, a party seeking to restrict access of records bears the burden of establishing a compelling interest why access should be restricted and that the protective order is drafted " 'in the manner least restrictive of the public's interest.' " *Johnson*, 232 Ill. App. 3d at 1072-73, quoting *Shenandoah Publishing House, Inc. v. Fanning*, 235 Va. 253, 259, 368 S.E.2d 253, 256 (1988).

In *Johnson*, the parties entered a settlement agreement regarding a personal injury case while they were getting divorced. A condition of the settlement was that its terms remain confidential. Accord-

ingly, although the terms of the settlement were recited to the court, the actual settlement document did not become part of the record. *Johnson*, 232 Ill. App. 3d at 1069.

A few months later, the parties presented a settlement to the court regarding the distribution of the settlement proceeds from the personal injury case. The settlement included a term that all documents in the *entire* file be sealed. The parties then requested the court to impound the file, and the court entered the order. *Johnson*, 232 Ill. App. 3d at 1070.

After the trial court entered its order, a newspaper requested access to all the materials impounded by the court's order. After arguments, the court declined to grant the newspaper access, explaining that the impoundment " 'was an essential part of the settlement.' " *Johnson*, 232 Ill. App. 3d at 1070. The newspaper appealed the trial court's decision.

The *Johnson* court reversed the trial court's impoundment orders. The court stated that the right of access attaches to any documents filed with the court. Accordingly, since the written settlement agreement concerning the dissolution became part of the court record, the right of access attached to that document.

Then, the *Johnson* court explained that the personal injury settlement never was attached to the record. Therefore, the right of access did not extend to the personal injury written settlement, although the transcript of the hearing at which its terms were recited was subject to the right, because the transcript had been made part of the record. *Johnson*, 232 Ill. App. 3d at 1074.

Similarly, in this case the settlement agreement has not been filed with the trial court. Accordingly, the right of access has not attached to the agreement. If, however, the settlement had been filed, then only a compelling reason, accompanied by specific factual findings, could justify keeping it from public view. See *Johnson*, 232 Ill. App. 3d at 1075.

Contrary to the parties' belief, their "desire and agreement that the court records were to be sealed falls far short of outweighing the public's right of access to the files." *Johnson*, 232 Ill. App. 3d at 1075; see also *Fidelity Financial Services, Inc. v. Hicks*, 267 Ill. App. 3d 887, 893 (1994) (mere desire for secrecy cannot suffice as a compelling interest).

Moreover, the parties' explanation that the material contained in the agreement is "confidential" is not a compelling interest that could overcome the presumption of access to judicial files. Instead, the only documents that possibly could overcome such a presumption are those that are privileged and potentially seriously damaging or

embarrassing. *Cf. Johnson*, 232 Ill. App. 3d at 1076 (Steigmann, J., specially concurring).

It is this writer's belief that complete access to the type of information sought to be protected in this case encourages confidence in the court system. Nondisclosure creates a perception of favored status before the court by the party—or parties—seeking the order. To allow parties to seal documents based solely on their agreement that the documents are "confidential" undermines our judicial system and is directly contrary to the common-law right of access to public records. Therefore, it is my view that trial courts should view a protective order as an extremely serious issue, and I write to encourage the trial court to grant protective orders only under the most compelling circumstances.