NOTICE

Decision filed 04/09/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0140

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THOMAS COY, D.O., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Washington County. |
| | ) | |
| v. | ) | No. 05-L-2 |
| | ) | |
| WASHINGTON COUNTY HOSPITAL | ) | |
| DISTRICT, d/b/a Washington County | ) | |
| Hospital, | ) | |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | |
| (The Southern Illinoisan, Intervening | ) | Honorable |
| Petitioner-Appellant, and Nashville News, | ) | Richard Brown, |
| Intervening Petitioner). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the opinion of the court:

Intervenor-appellant The Southern Illinoisan, a daily newspaper headquartered in Carbondale with readership across a broad swath of southern Illinois, appeals the February 21, 2006, order of the circuit court of Washington County denying The Southern Illinoisan's request that the court unseal, with respect to the names of patients contained therein, the court's order of February 18, 2005, in the above-captioned case. For the reasons that follow, we affirm the circuit court's February 21, 2006, order.

On June 28, 2004, defendant-appellee Washington County Hospital District, a publicly owned hospital, suspended the medical privileges of plaintiff-appellee Dr. Thomas Coy, who was at the time a hospital employee. The hospital cited "several" recent cases of substandard medical care and stated that a suspension was necessary to reduce the likelihood of immediate injury to patients. On January 21, 2005, Dr. Coy sued the hospital. Dr. Coy

1

alleged procedural deficiencies in his suspension, sought the enforcement of a related settlement agreement, and requested various other forms of relief not directly relevant to this appeal. Journalists for the Nashville News, a weekly newspaper in Washington County, and The Southern Illinoisan reported on matters concerning the hospital and Dr. Coy.

On February 18, 2005, presumably pursuant to settlement negotiations, counsel for Dr. Coy forwarded to the hospital an agreed order, which counsel requested that the hospital submit to the court. On the same date, the hospital delivered to the court a letter requesting that the court file the accompanying agreed order under seal. For reasons that neither Dr. Coy nor the hospital has been able to explain adequately, the agreed order contained, *inter alia*, the names of the seven nonparty patients to whom Dr. Coy had allegedly provided substandard care. The order did not contain any other information about the patients and did not reference the patients' medical records, conditions, or diagnoses. The court complied with the hospital's request, entering, under seal, the February 18, 2005, order that is the subject of the present appeal.

Subsequently, reporters from the Nashville News and The Southern Illinoisan who had been covering the case visited the office of the Washington County circuit clerk and inspected the court file in the case, finding, *inter alia*, the sealed order. In an effort to seek access to the sealed order, the Nashville News and The Southern Illinoisan filed a petition to intervene in the lawsuit. A hearing on the petition was held on June 21, 2005. The petition to intervene was granted on July 22, 2005, and on August 11, 2005, the intervenors filed a motion for access to the sealed order. The hospital filed a response to the motion for access, to which the intervenors in turn replied. On August 15, 2005, Dr. Coy moved to amend the sealed order to prohibit the disclosure of the nonparty patient names contained therein but to unseal the remainder of the settlement agreement.

Eventually, on October 4, 2005, the circuit court granted Dr. Coy's motion to amend

2

the sealed order, thereby unsealing the order but for the names of the seven nonparty patients. The intervenors moved the court to vacate or, alternatively, to reconsider its decision, and oral argument was held. On February 21, 2006, the court entered an order denying the request of the intervenors to unseal the order with regard to the names of the patients. In support of its decision to deny the request to unseal, the trial court relied upon *Tomczak v. Ingalls Memorial Hospital*, 359 Ill. App. 3d 448 (2005). The trial court ruled that granting the request to unseal would violate the federal Health Insurance Portability and Accountability Act of 1996 (hereinafter HIPAA) (42 U.S.C. §1320d-2 (2000)) and that the court was required to "comply with the HIPAA regulations when issuing orders." Accordingly, the trial court ruled that the "the names of the patients are protected from discovery" and that the court was required to deny the request to unseal the names. We note that, while the circuit court based its decision partially on its belief that HIPAA required that the order remained sealed with respect to the patients' names, it also exercised its discretion in finding that "there is good reason to seal the names of the patients." The Southern Illinoisan filed a timely notice of appeal and now contends the trial court erred in denying the request to unseal.

We begin our analysis by observing that under the common law, judicial records and documents are presumptively open to the public. *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 230 (2000). The common law right of access to court records has been deemed by the Illinois Supreme Court to be "essential to the proper functioning of a democracy" because "citizens rely on information about our judicial system in order to form an educated and knowledgeable opinion of its functioning." *Skolnick*, 191 Ill. 2d at 230. Moreover, the availability of court files for public scrutiny is essential to the public's right to monitor the functioning of the court system to ensure quality, honesty, and respect for our legal system. *Skolnick*, 191 Ill. 2d at 230.

3

The presumptive right of public access to judicial records attaches to court orders and opinions. *A.P. v. M.E.E.*, 354 Ill. App. 3d 989, 997 (2004). Orders of a court are public documents and should not be kept under seal. *A.P.*, 354 Ill. App. 3d at 997. Orders and opinions are not the property of litigants; rather, they belong to the public, which underwrites the judicial system that produces them. *A.P.*, 354 Ill. App. 3d at 997. When a settlement agreement is filed with a court, the presumptive right of public access to judicial records attaches to that agreement. *In re Marriage of Johnson*, 232 Ill. App. 3d 1068, 1074 (1992). The way to avoid the attachment of the presumption with regard to a settlement agreement is simple: the parties to a case "are free to make whatever contractual arrangements they wish as part of their settlement agreement *and keep it to themselves* by simply not making it part of the court record." (Emphasis in original.) *In re Marriage of Johnson*, 232 Ill. App. 3d at 1076 (Steigmann, J., specially concurring).

That said, the presumption of public access to court records and documents, although very strong, is not absolute. To overcome the presumption of access, the moving party bears the burden of establishing both that there is a compelling interest for restricting access and that the resulting restriction furthering that interest is tailored as narrowly as possible. *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 231-32 (2000). An order denying a motion to unseal a court file or document is reviewed for an abuse of discretion. *A.P. v. M.E.E.*, 354 Ill. App. 3d 989, 994 (2004).

Against the above backdrop, we turn to the present case. With regard to the ruling of the trial court in this case, we agree with The Southern Illinoisan that the trial court erred as a matter of law in concluding that the court would violate HIPAA by unsealing its order. We begin by noting that *Tomczak v. Ingalls Memorial Hospital*, 359 Ill. App. 3d 448 (2005), the case upon which the trial court relied, did not involve the disclosure of names. That issue was not before the *Tomczak* court, and only two or three sentences of the court's nine-page

4

opinion discuss the issue of the identity of the nonparty patients involved. Accordingly, the applicability of *Tomczak* to the present case is questionable at best. More importantly, although the judge in the present case wrote that based upon *Tomczak* he was persuaded that circuit court orders "must comply with HIPAA regulations," the *Tomczak* court never reached that question. To the contrary, the *Tomczak* court found HIPAA to be inapplicable because in that case the information sought–triage time, treatment time, and triage acuity designation for certain nonparty patients–was not " 'protected health information' " as defined by regulations promulgated pursuant to HIPAA. *Tomczak*, 359 Ill. App. 3d at 456 (quoting 45 C.F.R. §164.512(e)(1) (2002)). The court did not address whether it was a "covered entity" for HIPAA purposes. Put simply, *Tomczak* is inapposite to the present case and does not stand for the proposition that circuit court orders must comply with HIPAA.

Nor is a court a "covered entity" for HIPAA purposes. The applicability section of HIPAA provides, in pertinent part, that any standard adopted thereunder applies only to health plans, health care clearinghouses, and health care providers which transmit "any health information in electronic form in connection with a transaction" referred to elsewhere in HIPAA. 42 U.S.C. §1320d-1(a)(3) (2000). The application of HIPAA's privacy rule is likewise limited to health plans, health care clearinghouses, and qualified health care providers, each of which is defined as a "covered entity." 45 C.F.R. §§160.102(a), 160.103 (2002). Accordingly, the plain language of HIPAA demonstrates that the judiciary, which is not a health plan, a health care clearinghouse, or a qualified health care provider, is not subject to HIPAA's privacy rule. Courts and administrative agencies in a number of jurisdictions have agreed that only the small class of "covered entities" defined in HIPAA is subject to HIPAA's privacy rule. See, *e.g.*, *United States v. Mathis*, 377 F. Supp. 2d 640, 645 (M.D. Tenn. 2005); *Beard v. City of Chicago*, No. 03 C 3527 (unpublished memorandum opinion and order) (N.D. Ill. Jan. 10, 2005); 2004 Tex. Att'y Gen. Ord. 681, *available at*

5

http://www.oag.state.tx.us/opinions/ord/ord-681.pdf; 2004 Ky. Att'y Gen. Ord. 143, *available at* http://www.ag.ky.gov/NR/rdonlyres/EBAD7EC8-8118-4FE8-A4A5-5BD85DAD6B6F/0/04ORD143.doc. Moreover, in comments published in the Federal Register, the Assistant Secretary for Planning and Evaluation of the Department of Health and Human Services stated that there are no known situations "in which a covered entity would also be a judicial or administrative tribunal" and that the privacy rule "does not regulate the behavior of law enforcement officials or the courts." Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82462, 82524, 82680 (Dec. 28, 2000). In fact, there is a good reason a court is not a covered entity–because given its nature as a vehicle for the settlement of disputes, rather than as an entity that generates, stores, transmits, or analyzes medical data, a court could not be in possession of covered medical information to disclose unless that information had been provided, for whatever reason, by parties that already had access to that information. Because a court is not a covered entity for HIPAA purposes and HIPAA does not prevent the unsealing of the court order in this case, the trial court erred as a matter of law in ruling that it did.

Nevertheless, we may affirm the decision of the circuit court on any basis appearing in the record (*Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983)), and we do so here. We believe that the parties who seek to keep the order sealed–the hospital and Dr. Coy–have overcome the strong presumption in favor of public access to court documents, records, and orders by establishing both that there is a compelling interest why access should be restricted and that the resulting restriction furthering that interest is tailored as narrowly as possible. See *Skolnick*, 191 Ill. 2d at 231-32.

In the case at bar, the circuit court found a compelling interest why public access to the names of the nonparty patients should be restricted, in the form of a broad public policy in favor of a medical patient's right to privacy. In balancing this compelling interest against

6

the public's right of access, the circuit court came down on the side of protecting a patient's privacy. The circuit court narrowly tailored its restriction on the right of public access by omitting from the agreed order only the names of the seven nonparty patients and allowing public access to the rest of the document. We should alter the terms of a protective order only if no reasonable person could adopt the view taken by the circuit court. *Skolnick*, 191 Ill. 2d at 224. The view taken by the circuit court is reasonable and we will not disturb it.

Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information. This public policy is articulated and reflected in numerous Illinois statutes. See *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 587 (1986) (public policy is found in a state's constitution and statutes). Illinois law recognizes an individual's right to privacy and confidentiality in health care and medical records in the Medical Patient Rights Act (410 ILCS 50/3(d) (West 2004)) and the Hospital Licensing Act (210 ILCS 85/6.17(d) (West 2004)), an evidentiary privilege regarding communications between physician and patient (735 ILCS 5/8-802 (West 2004)), and an exemption to a Freedom of Information Act request where the request seeks patient records (5 ILCS 140/7 (West 2004)). While none of these statutes applies directly to the case at bar, an act can be against public policy even though it is not specifically prohibited by a state's statutes, for a finding of public policy can often be inferred from those statutes. *Petrillo*, 148 Ill. App. 3d at 587. Public policy should forbid conduct that tends to harm an established and beneficial interest of society, the existence of which is necessary for the good of the public, even though that conduct is not expressly prohibited by a state's statute. *Petrillo*, 148 Ill. App. 3d at 587.

The importance of a patient's right to privacy in his or her medical information has also been recognized in numerous judicial opinions. See *Parkson v. Central DuPage Hospital*, 105 Ill. App. 3d 850, 853-54 (1982) (a hospital is mandated to assert the physician-

7

patient privilege to ensure that the patients' records will be protected in accordance with the intention of the statute); *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 588 (1986) (an *ex parte* conference between defense counsel and a plaintiff's treating physician jeopardizes the sanctity of the physician-patient relationship and, therefore, is prohibited as being against public policy); *Reagan v. Searcy*, 323 Ill. App. 3d 393, 398 (2001) (the medical records of nonparties are protected by the physician-patient privilege).

Individuals have a right to and an expectation of privacy related to their medical information, and this right and expectation of privacy is reflected in our public policy. This right to privacy is a compelling interest that must be balanced against the public's right of access to judicial records and documents. *In re Marriage of Johnson*, 232 Ill. App. 3d 1068, 1072 (1992). The circuit court properly balanced these two competing interests and, by narrowly tailoring its restriction on public access by omitting only the names of the nonparty patients, served both interests.

While it is true that the parties could have avoided the attachment of the presumption in favor of public access with regard to the settlement agreement by simply not making it a part of the court record or they could have omitted the names of the seven nonparty patients therefrom, the seven nonparty patients should not be penalized for the mistakes of the parties. The seven nonparty patients are not parties to this litigation and have not in any way consented to the disclosure of the fact that they sought medical treatment from Dr. Coy or that their information was used in a peer review of Dr. Coy by the hospital. They had no say in the settlement agreement and no opportunity to protect their identities from disclosure. The parties to this litigation did attempt to protect the identities of the patients by asking that the settlement agreement be sealed. The circuit court obliged. That the parties could have done a better job of protecting the privacy interests of the nonparty patients does not abrogate those privacy interests. The circuit court acted to protect those privacy interests by narrowly

restricting the public's access to the names contained in the settlement agreement. It did not abuse its discretion in so doing. We uphold the circuit court's order restricting access to the names of the seven nonparty patients. We do so not to protect the interests of the hospital or Dr. Coy, but to protect the interests of those unrepresented patients, who may even be unaware of the controversy surrounding them.

While it may be argued that there is no expectation of privacy with respect only to the name of a patient, we do not agree. Whether or not that information is technically privileged under the statute (735 ILCS 5/8-802 (West 2004); see *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437, 439 (1990)), a patient may still have an expectation that the fact that he or she visited with or was treated by a physician will remain private. For example, if the physician is an abortionist, an oncologist, an HIV/AIDS specialist, or a mental health professional, to name only a few, an individual may want to keep private the fact that he or she visited with or was treated by that physician. In such a case, revealing the name of a patient may also reveal sensitive medical information about that patient.

Finally, we do not see how the revealing of the names of the seven nonparty patients will advance the public good or further the rationale behind allowing public access to judicial records. The rest of the settlement agreement has been unsealed by the circuit court and is open to public access. Protecting the identities of the nonparty patients will not impair the public's ability to " 'monitor the functioning of our courts, thereby insuring quality, honesty[,] and respect for our legal system.' " *Skolnick*, 191 Ill. 2d at 230 (quoting *In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984)). Accordingly, the circuit court properly determined that the public's right of access to the identities of the nonparty patients did not outweigh the compelling interest, as reflected in our public policy, of the privacy rights of those individuals regarding their medical treatment by Dr. Coy. The circuit court tailored its restriction on public access as narrowly as possible. We therefore affirm

9

the decision of the circuit court.

Affirmed.

WEXSTTEN[1], J., concurs.

JUSTICE SPOMER, dissenting:

I respectfully dissent. I agree with my colleagues that a court is not a covered entity for HIPAA purposes, that HIPAA does not prevent the unsealing of the court order in this case, and that the trial court erred as a matter of law in ruling that it did. I cannot agree, however, that in addition to its reliance on HIPAA, the circuit court "exercised its discretion in finding that 'there is good reason to seal the names of the patients' " (slip op. at 3) or that the court "found a compelling interest why public access to the names of the nonparty patients should be restricted, in the form of a broad public policy in favor of a medical patient's right to privacy" (slip op. at 6). The quotation lifted by the majority from the circuit court's order–"there is good reason to seal the names of the patients"–is followed in the order only by a discussion of HIPAA. In fact, the order never mentions public policy or any reason other than HIPAA to keep the order sealed. Likewise, during the November 18, 2005, hearing that preceded the court's order, Judge Brown engaged the parties in an extensive discussion of HIPAA and its applicability to the case at bar, and he even pronounced from the bench, in language mirrored almost precisely in the written order, that he found "that there is a good reason to seal the names of these patients to comply with these–with these HIPA [*sic*] rules." It is clear from the record that the court's order was based entirely upon

---

[1]Justice Hopkins participated in oral argument. Justice Wexstten was later substituted on this panel and has read the briefs and listened to the audiotape of oral argument.

10

the court's misapprehension of the applicability of HIPAA and was in no part based upon public policy. Accordingly, I cannot agree with the majority that the circuit court based its decision only "partially" (slip op. at 3) on HIPAA, nor can I subscribe to the fiction that in affirming on the basis of public policy, this court is reviewing an exercise of the circuit court's discretion.

Furthermore, even if the circuit court had advanced public policy as an alternative ground for keeping the names of the patients under seal, I would still not agree that the circuit court did not abuse its discretion in so doing, because I do not believe that the parties who seek to keep the order sealed–the hospital and Dr. Coy–have overcome the strong presumption in favor of public access to court documents, records, and orders by establishing both that there is a compelling interest why access should be restricted and that the resulting restriction furthering that interest is tailored as narrowly as possible. See *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 231-32 (2000).

As explained in the majority disposition and elaborated upon below, the posture of this case is essentially as follows. Presumably pursuant to settlement negotiations, the hospital and Dr. Coy worked out a resolution of their dispute. Counsel for Dr. Coy apparently memorialized that resolution in a settlement agreement that included within it the names of the seven nonparty patients to whom Dr. Coy had allegedly provided substandard care but did not reference the patients' medical records, conditions, or diagnoses. Counsel for Dr. Coy and counsel for the hospital, for reasons unknown, chose to file with the court the settlement agreement itself, rather than a pleading seeking a dismissal and referencing the settlement agreement, and they requested that the agreement be filed under seal. Without a hearing, the court complied. During the June 21, 2005, hearing on the petition to intervene filed by the Nashville News and The Southern Illinoisan, counsel for the petitioners repeatedly questioned why the order needed to be sealed and repeatedly wondered why

11

sensitive information would be included in the agreed order, rather than in separate documents referenced by the order but not filed with the court. Neither counsel for the plaintiff nor counsel for the hospital provided an explanation for the inclusion of the so-called sensitive information (*i.e.*, the names of the patients) they sought to protect. Likewise, when, on August 15, 2005, Dr. Coy moved to amend the sealed order to prohibit the disclosure of the nonparty patient names contained therein but to unseal the remainder of the agreement, Dr. Coy still did not indicate why nonparty patient names had been included in the order in the first place. Accordingly, despite multiple opportunities throughout this case to do so, neither the hospital nor Dr. Coy has been able to explain adequately why the agreement itself, containing the names of Dr. Coy's alleged victims, needed to be filed with the court. At oral argument before this court, counsel for the hospital conceded that it was not necessary to include the names in the agreed order, indicated that had it been his decision to make, the names would not have been included, and suggested that it was his understanding that the names were included to aid "enforcement of the order." He did not explain how including the names in the actual order, rather than in a document referenced by the order, would advance that enforcement, if enforcement were to become necessary.

Accordingly, once the circuit court's errant HIPAA analysis is discarded, the pivotal question for this court becomes whether the intentional, unexplained, and *unnecessary* inclusion in a court filing of the names of–*but not any medical information about*–seven nonparty patients establishes a "compelling interest" sufficient to overcome the strong presumption in favor of open public access to court files and therefore to justify sealing that filing from public view.

My colleagues believe that such a compelling interest exists because "Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information" (slip op. at 7), and they cite a number of statutes and

12

cases supporting that position. I agree that, with respect to "medical information," as a general rule such a public policy exists and is supported by the statutes and cases cited. The problem for the majority is that in this case no "medical information" is involved: only the names of the patients–not their medical records, their conditions, or their diagnoses.

The majority holds that although the mere name of a patient is not protected by the physician-patient privilege codified at section 8-802 of the Code of Civil Procedure (735 ILCS 5/8-802 (West 2004)), "a patient may still have an expectation that the fact that he or she visited with or was treated by a physician will remain private." Slip op. at 9. As a result of this expectation, according to the majority, the mere name of a patient becomes "medical information" subject to protection. I find the expectation of privacy pronounced by the majority to be a highly speculative one, unsupported by existing public policy, case law, or even the facts of this case. Indeed, the majority cites no cases wherein this purported expectation has even been found to exist, let alone found to convert the mere name of a patient into "medical information" representing a "compelling interest" that outweighs the strong presumption in favor of open public access to court files that is the law in Illinois. Furthermore, to buttress its proposition that this judicially crafted expectation of privacy is sufficient to trump our presumptively open court system–and that accordingly the names of the nonparty patients in this case should remain sealed–the majority cites the example of patients who have visited abortionists, oncologists, HIV/AIDS specialists, or mental health professionals. These examples are in no way relevant to the case at bar, which involves the treatment of patients at a publicly owned county hospital that treats a wide variety of patients suffering from a wide variety of ailments, major and minor.

In fact, long-standing precedent in this state holds, very clearly, that the disclosure of a patient's name does not violate the physician-patient privilege. See, *e.g.*, *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437, 445 (1990); *Davis v. Hinde*, 141 Ill. App.

13

3d 664, 666 (1986); *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438 (1979). That is because the name of a patient generally has no relation to the ailment or treatment received and therefore is not privileged information. *House*, 206 Ill. App. 3d at 445; *Geisberger*, 72 Ill. App. 3d at 437. That is certainly true in the case at bar, where the order contains only the names of patients treated at a publicly owned county hospital and does not reference the patients' medical records, conditions, or diagnoses or provide any other information that could lead one to ascertain those conditions or diagnoses.

Accordingly, I do not believe the expectation of privacy created by the majority establishes a "compelling interest" sufficient to overcome our state's strong presumption in favor of open public access to court files. As the statutes cited by the majority demonstrate, the General Assembly has had ample opportunity to shape the law of this state to reflect the state's public policy with regard to medical information. To date, the General Assembly has not even recognized the expectation of privacy crafted by the majority, let alone elevated it to a status sufficient to overcome the presumption of open public access to court files, and I believe it is unwise and improper for this court to take it upon itself to do so.

It is not only possible, but indeed common practice, to protect the names of nonparties in cases such as this without sacrificing the openness of our judicial system. As Justice Steigmann observed more than a decade ago in his special concurrence in *In re Marriage of Johnson*, 232 Ill. App. 3d 1068, 1076 (1992), the way to avoid this situation with regard to a settlement agreement is simple: the parties to a case "are free to make whatever contractual arrangements they wish as part of their settlement agreement *and keep it to themselves* by simply not making it part of the court record" (emphasis in original). As explained above, should the parties fail to do so, I do not believe it is proper for this court to rectify that failure by sealing otherwise public records, particularly where other remedies are available to nonparties aggrieved by that failure. As the majority in *In re Marriage of Johnson* held,

14

"[T]he parties' desire and agreement that the court records were to be sealed falls far short of outweighing the public's right of access to the files." *In re Marriage of Johnson*, 232 Ill. App. 3d at 1075. That is because courts cannot honor the request of parties to seal records simply because the parties desire to do so "without seriously undermining the tradition of an open judicial system." *In re Marriage of Johnson*, 232 Ill. App. 3d at 1075. Likewise, the mere fact that a person "may suffer embarrassment or damage to his reputation" as a result of information contained within a document filed with the court "does not justify sealing the court file." *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 234 (2000).

Although not addressed by the majority, the hospital and Dr. Coy advance in their brief on appeal alternative grounds to affirm the errant decision of the circuit court. The hospital and Dr. Coy do not directly analogize any of the statutes they cite, or even their broad public policy arguments, to the actual facts of this case, which, as detailed above, involve the intentional, unexplained, and *unnecessary* inclusion in a court filing that is presumptively public of the names of–but not any medical information about–seven nonparty patients. Accordingly, although the statutes referenced by the hospital and Dr. Coy and the policy arguments derived therefrom involve privacy with regard to medical records in general, the strained arguments the hospital and Dr. Coy make fail to connect these statutes to this case in any persuasive manner.

For example, the hospital and Dr. Coy cite both the Medical Patient Rights Act (410 ILCS 50/0.01 *et seq.* (West 2004)) and the Hospital Licensing Act (210 ILCS 85/1 *et seq.* (West 2004)) as authorities supporting a generalized public policy argument that the names of the patients should remain sealed. However, by its own language, section 3(d) of the Medical Patient Rights Act is limited to the disclosure of medical information by a "physician, health care provider, health services corporation[,] and insurance company." 410 ILCS 50/3(d) (West 2004). Likewise, section 6.17 of the Hospital Licensing Act pertains

15

only to the release of medical information by the hospital's medical staff and its agents and employees. 210 ILCS 85/6.17 (West 2004). Moreover, although the hospital and Dr. Coy are correct in asserting that patient records are exempt from requests under the Freedom of Information Act (5 ILCS 140/7(1)(b)(i) (West 2004)), that fact is irrelevant to the present case. In sum, the situations contemplated by these statutes are so divorced from the facts of the present case that the policy arguments the hospital and Dr. Coy attempt to glean from these statutes and affix to the present case are unconvincing.

Equally unconvincing is the contention that under the medical studies statute (735 ILCS 5/8-2101 *et seq.* (West 2004)), the names of the patients must remain sealed. The purpose of the medical studies statute is to advance the quality of health care by ensuring that members of the medical profession effectively engage in a peer-review process. *Ardisana v. Northwest Community Hospital, Inc.*, 342 Ill. App. 3d 741, 746 (2003). The medical studies statute protects against "disclosure of the *mechanisms* of the peer-review process, including information gathering and deliberation leading to the ultimate decision rendered by a hospital peer-review committee." (Emphasis added.) *Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 402 (1998). Accordingly, documents generated specifically for the use of a peer-review committee receive protection under the medical studies statute. *Chicago Trust Co.*, 298 Ill. App. 3d at 402. Significantly, the medical studies statute is found in the "Evidence" article of the Code of Civil Procedure and is intended to govern the discoverability and admissibility of information in pending litigation. 735 ILCS 5/8-2102 (West 2004). The burden of establishing a discovery privilege under the medical studies statute is on the party seeking to invoke it. *Ardisana v. Northwest Community Hospital, Inc.*, 342 Ill. App. 3d 741, 746 (2003). No privilege exists with regard to information or documents that might have been relied upon in the peer-review process but were generated prior to the process. *Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 403

16

(1998).

Consequently, there are several problems with the arguments advanced by the hospital and Dr. Coy under the medical studies statute. First, as noted above, the medical studies statute is found in the "Evidence" article of the Code of Civil Procedure and is intended to govern the discoverability and admissibility of information in pending litigation; no section of the medical studies statute even comes close to addressing a scenario such as that in the present case where the issue is the intentional, unexplained, and *unnecessary* inclusion in a court filing that is presumptively public of the names of–but not any medical information about–seven nonparty patients. Second, as noted above, the medical studies statute protects against the disclosure of the *mechanisms* of the peer-review process, including information gathering and deliberation leading to the ultimate decision rendered by a hospital peer-review committee (see *Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 402 (1998)), and it does not protect against information or documents that might have been relied upon in the peer-review process but were generated prior to the process. *Chicago Trust Co.*, 298 Ill. App. 3d at 403. Accordingly, even if the medical studies statute could somehow be interpreted to apply to the factual situation in this case, the medical studies statute would provide no authority for withholding the names of the nonparty patients, because those names have nothing to do with the mechanisms of the peer-review process and clearly were generated prior to the process. Third, although the hospital and Dr. Coy posit that unsealing the court order "will destroy individuals' right to, and expectation of, privacy related to medical treatment" and "will make all patients reticent to share personal information with their doctors for fear their names would end up in the morning paper," I cannot agree. Given that in this case it was counsel who put the patients in the position of having their names divulged, not anyone in the medical community itself, this policy argument is unpersuasive. I simply do not believe the filing of the patients' names in a court document in this case will

17

"chill" the peer-review process in general, because the facts of this case are, hopefully, unlikely to repeat themselves. The hospital and Dr. Coy have not met their burden of establishing that a privilege exists in this case under the medical studies statute, and I believe it would be unwise and improper for this court to create that privilege under the medical studies statute on the basis of the public policy arguments advanced by the hospital and Dr. Coy.

The majority's newly minted, judicially crafted public policy holding to the contrary notwithstanding, the hospital and Dr. Coy have failed to demonstrate a compelling interest justifying the trial court's decision to keep its order sealed. Accordingly, the hospital and Dr. Coy have failed to overcome the strong presumption in favor of public access to court documents, records, and orders. For the foregoing reasons, I would reverse the circuit court's February 21, 2006, order and remand with directions to unseal the entire February 18, 2005, order. Because my colleagues choose to do otherwise, I respectfully dissent.